**UNION NAT. BANK OF LITTLE ROCK, ARK., v. DURKIN, Secretary of Labor.**

No. 14869.

United States Court of Appeals Eighth Circuit.

Nov. 6, 1953.

849

J. Merrick Moore, Frank E. Chowning, Lawrence B. Burrow, Sr., and Moore, Burrow, Chowning & Mitchell, Little Rock, Ark., filed brief for appellant.

Sylvia S. Ellison, Atty., U. S. Dept. of Labor, Washington, D. C. (Stuart Rothman, Sol., Bessie Margolin, Chief of Appellate Litigation, William A. Lowe, Atty., U. S. Dept. of Labor, Washington, D. C., and Earl Street, Regional Atty., U. S. Dept. of Labor, Dallas, Tex., were with her on the brief), for appellee.

Before SANBORN and THOMAS, Circuit Judges, and HARPER, District Judge.

SANBORN, Circuit Judge.

This action was brought by the Secretary of Labor to enjoin the continuance of alleged violations by the Union National Bank of Little Rock, Arkansas, of the minimum wage, overtime, and "hot goods" provisions of the Fair Labor Standards Act of 1938, as amended,[1] 52 Stat. 1060, 63 Stat. 910, 29 U.S.C.A. § 201 et seq.

The Bank denied that it had violated the Act. The facts were stipulated. The District Court determined that twelve maintenance employees of the Bank—who the Secretary asserted were, and the Bank contended were not, within the coverage of the Act—were engaged in the production of goods for commerce within the meaning of the Act. The court granted judgment for the injunctive relief prayed for, and the Bank has appealed.

The facts may be summarized as follows:

The Bank owns and operates the building in Little Rock in which its national banking business is conducted. The Bank prepares and works upon certificates of stocks, bonds, and other securities; prepares checks, notes, drafts, and other commercial paper of all kinds; endorses, stamps, wraps in bulk and ships to points outside the State of Arkansas large quantities of securities and currency; and transmits checks, notes, drafts, and other commercial paper to points outside the State of Arkansas. The Bank, in the course of its business, receives from points outside the State securities, checks, drafts, notes and other commercial paper of all kinds.

The total area of the Bank building is 48,427 square feet, of which the Bank occupies approximately 38,000 square feet. Of this banking space, about 2,400 square feet are used as an auditorium and 2,200 square feet as lounges for the Bank employees. Approximately 10,400 square feet of the building, not used by the Bank, are occupied by miscellaneous tenants. Of this rented space, 4,129 square feet are occupied by branch offices or agencies of out-of-state insurance companies. These branch offices or agencies are daily engaged in corresponding with home offices and in receiving from and transmitting to such home offices policy applications, policies, premium payments, claims, and benefit payments.

1. Sections 6, 7, 15(a) (2), and 15(a) (1), 29 U.S.C.A. §§ 206, 207, 215(a) (2), and 215(a) (1).

Of the twelve maintenance employees involved, ten perform a substantial part of their duties in the portion of the building occupied by the Bank. They sweep, clean and mop the floors, dust the furniture and fixtures, and generally maintain the Bank's quarters in a proper condition of cleanliness and order so as to permit the carrying on of the Bank's business. In addition to the ten employees above referred to, there are two others, who do not work in the portion of the building used by the Bank. One is an elevator operator who serves the entire building from the basement to the fourth floor and who transports customers and employees of the Bank and of its tenants, and the other is a cleaning woman who works on the fourth floor of the building performing janitorial services in five of the eight branch offices of out-of-state insurance companies.

Eleven of the twelve employees work approximately 36 hours a week. No one of them is paid as much as 75 cents an hour. One employee works approximately 50 hours per week and does not receive as much as 75 cents an hour straight time or $1.12½ per hour for overtime. All of the employees involved are engaged solely in maintenance and janitorial work, and none of them has been or is engaged in any part of the banking operations of the Bank or in the insurance operations of its insurance tenants.

The District Court, after finding the facts to be as stipulated, concluded that the Bank was engaged in the production of goods for interstate commerce and that the out-of-state insurance companies having branch offices in the building were also engaged in the production of goods for interstate commerce; that the maintenance and custodial employees of the Bank, including the elevator operator, were engaged in closely related processes and occupations directly essential to the production of such goods; that the Bank had violated Sections 6 and 15 (a) (2) of the Act, as amended, 29 U.S. C.A. § 206 and § 215(a) (2), by paying the employees in suit less than 75 cents

an hour, and had violated Sections 7 and 15(a) (2) of the Act, as amended, 29 U.S.C.A. § 207 and § 215(a) (2), by failing to comply with the overtime provisions of the Act, and had therefore also violated Section 15(a) (1) of the Act, as amended, 29 U.S.C.A. § 215(a) (1), by the shipment, delivery, transportation, and offering for transportation, in interstate commerce, securities, currency, notes, drafts and other commercial paper produced by the Bank. 112 F.Supp. 702.

The Bank does not challenge the District Court's ruling that it and the insurance companies which maintain branch offices in its building are engaged in the production of goods for commerce within the meaning of the Fair Labor Standards Act. That they are so engaged is no longer, we think, open to question. Western Union Telegraph Co. v. Lenroot, 323 U.S. 490, 502–503, 65 S.Ct. 335, 89 L. Ed. 414; Bozant v. Bank of New York, 2 Cir., 156 F.2d 787; Darr v. Mutual Life Insurance Co. of New York, 2 Cir., 169 F.2d 262, certiorari denied 335 U.S. 871, 69 S.Ct. 166, 93 L.Ed. 415; Baldwin v. Emigrant Industrial Savings Bank, 2 Cir., 150 F.2d 524, 161 A.L.R. 1234, certiorari denied 326 U.S. 767, 66 S.Ct. 171, 90 L.Ed. 462.

■ The question for decision is whether the maintenance employees of the Bank who service its building are engaged in the production of goods for commerce within the meaning of Section 3(j) of the Act, as amended, 63 Stat. 911, 29 U.S.C.A. § 203(j). That section, since October 26, 1949, has read as follows:

"§ 3. As used in this Act—

\* \* \* \* \*

"(j) 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this Act an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related

process or occupation directly essential to the production thereof, in any State."

Prior to its amendment on October 26, 1949, the section read:

"§ 3. As used in this Act—

\*    \*    \*    \*    \*

"(j) 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this Act an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State."

Thus the test for determining whether employees such as those in suit were engaged in the production of goods for commerce was, prior to October 26, 1949, whether they were employed *"in any process or occupation necessary to the production thereof"*; while, after the 1949 amendment to the Act, the test was whether they were employed in *"any closely related process or occupation directly essential to the production thereof"*.

In A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638, decided June 1, 1942, the Supreme Court decided that employees engaged in the maintenance and operation of loft buildings, the tenants of which were engaged principally in the production of goods (clothing) for interstate commerce, were within the coverage of the Act because engaged in an occupation necessary to the production of goods for commerce, within the meaning of Section 3(j) of the Act. The employees in that case included an engineer, fireman, elevator operators, watchmen, and porters. The porters kept the building clean and habitable. In the course of its opinion, the Supreme Court said, at page 524 of 316 U.S., at page 1120 of 62 S.Ct.: "Without light and heat and power the

tenants could not engage, as they do, in the production of goods for interstate commerce. The maintenance of a safe, habitable building is indispensable to that activity." The Supreme Court found no requirement in the Act that the employees must themselves participate in the physical process of the making of the goods before they could be regarded as engaged in the production of the goods. At page 524 of 316 U.S., at page 1120 of 62 S.Ct. The court said, at pages 525–526 of 316 U.S., at page 1121 of 62 S.Ct.: "In our judgment, the work of the employees in these cases had such a close and immediate tie with the process of production for commerce, and was therefore so much an essential part of it, that the employees are to be regarded as engaged in an occupation 'necessary to the production of goods for commerce'."

■ If the work of maintenance employees in a building the occupants of which are principally engaged in the production of goods for commerce is "indispensable to that activity" and "an essential part of it", one reasonably can deduce that the employees are engaged in a "closely related process or occupation directly essential to the production" of the goods. In fact, that conclusion would seem to be inescapable.

As the District Court pointed out in its opinion in this case, the Supreme Court in Borden Company v. Borella, 1945, 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1865, reaffirmed the teaching of the Kirschbaum case and even went a step further. The Borden case involved maintenance employees in a building in New York City which belonged to the Borden Company and housed its central office. The Company occupied 58% of the space in the building. It had manufacturing plants in both the United States and Canada. These plants were supervised, directed and controlled by and from the central office in the building in New York City. No products, however, were physically made or sold in that building. The Supreme Court, nevertheless, held that the maintenance employees, whose work "is essential or necessary to such exec-

utive, administrative or professional activities of a productive nature", came within the coverage of the Act. At page 684 of 325 U.S., at page 1225 of 65 S.Ct.

■ The legislative history of the amendment made in 1949 to the definition of the term "produced" in Section 3(j) of the Act, shows that the change in that definition was not intended to affect the coverage of the Act in so far as maintenance employees such as those involved in the present case were concerned.[2]

The Bank relies in part upon our decision in Convey v. Omaha National Bank, 8 Cir., 140 F.2d 640, in which this Court held that the maintenance employees of the Omaha National Bank who serviced its building were not within the coverage of the Act because they were not engaged in interstate commerce. It was distinctly pointed out in our opinion in that case that no claim was made that the employees there involved were engaged in the production of goods for commerce. The sole question decided was that building service employees were

2. The Conference Report of the Managers on the part of the House with reference to this change of definition, reads, so far as pertinent, as follows, U.S.Code Congressional Service, Vol. 2, 81st Congress, First Session 1949, pages 2252 and 2253:

"Coverage under the act for a large category of employees is determined by the definition of the term 'produced'. The definition is divided into two parts. The first part, which the conference bill leaves unchanged, covers any employee 'producing, manufacturing, mining, handling, transporting, or in any other manner working on * * * goods.' Thus the first part covers employees engaged in actual production activities as opposed, for example, to employees engaged in maintenance, clerical, or custodial work. The second part of the present definition, covering any employee engaged in 'any process or occupation necessary to the production' of goods, has been interpreted by the Administrator and the courts to cover employees of many local merchants, because some of the customers of such merchants are producing goods for interstate commerce. It has made no difference that the merchants sell their goods locally and that such goods do not become a part or ingredient of the goods produced by any of their customers (McComb v. Deibert ([D.C.] E.D.Pa.1949 [117 F.Supp. 41]), 16 Labor Cases Par. 64,982). The courts have also held the act applicable to employees engaged in maintaining and repairing private homes and dwellings where such homes and dwellings are being leased by interstate producers to their employees. Coverage of the act has also been extended to employees of an independently owned and operated restaurant located in a factory (McComb v. Factory Stores

[Co.], [D.C.] (N.D.Ohio 1948), 81 F. Supp. 403).

"Under the bill as agreed to in conference an employee will not be covered unless he is shown to have a closer and a more direct relationship to the producing, manufacturing, etc., activity than was true in the above-cited cases. On the other hand, the proposed changes are not intended to remove from the act maintenance, custodial, and clerical employees of manufacturers, mining companies, *and other producers of goods for commerce*. Employees engaged in such maintenance, custodial, and clerical work will remain subject to the act, notwithstanding they are employed by an independent employer performing such work on behalf of the manufacturer, mining company, or other producer for commerce. All such employees perform activities that are closely related and directly essential to the production of goods for commerce. [Italics supplied.]

"The bill as agreed to in conference also does not affect the coverage under the act of employees who repair or maintain buildings in which goods are produced for commerce ([A.B.] Kirschbaum [Co.] v. Walling, 316 U.S. 517 [62 S.Ct. 1116, 86 L.Ed. 1638]) or who make, repair, or maintain machinery or tools and dies used in the production of goods for commerce. Likewise, employees of public utilities, furnishing gas, electricity or water to firms within the State engaged in manufacturing, producing, or mining goods for commerce, will remain subject to the act. All the employees mentioned in this paragraph are doing work that is closely related and directly essential to the production of goods for commerce."

See and compare Tobin v. Promersberger, D.C.Minn., 104 F.Supp. 314, 317–318.

not covered by the Act "when employed in servicing a building in which no production for interstate commerce is carried on." At page 643 of 140 F.2d. Other cases, cited by the Bank, in which it has been held that such employees are not engaged in interstate commerce have no bearing upon the question with which we are confronted.

 Our conclusion is that this case was correctly decided by the District Court.

The judgment appealed from is affirmed.