NUNN'S BATTERY AND ELECTRIC
COMPANY, Inc., Appellant,

v.

W. Willard WIRTZ, Secretary of Labor,
United States Department of Labor,
Appellee.

No. 20347.

United States Court of Appeals
Fifth Circuit.

July 20, 1964.

Rehearing Denied Sept. 1, 1964.

Jack Crenshaw, Montgomery, Ala., for appellant.

Bessie Margolin, Associate Sol., Dept. of Labor, Beate Bloch, Atty., Dept. of Justice, Charles Donahue, Sol. of Labor, Jacob I. Karro, Atty., U. S. Dept. of Labor, Washington, D. C., Beverley R. Worrell, Regional Atty., for appellee.

Before RIVES, CAMERON* and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

In 1960 the Secretary of Labor brought injunctive proceedings against the appel-

---

* Circuit Judge Ben F. Cameron participated in the hearing of the case, but not in its decision. His death occurred on April 3, 1964.

lant, Nunn's Battery and Electric Company, Inc., to enforce compliance with the minimum wage, overtime, and record-keeping provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201–219. On appeal, this Court affirmed a judgment of the district court which was against Nunn's Battery and specifically found several of the employees to be engaged in commerce within the meaning of the Act. Nunn's Battery and Electric Co. v. Goldberg, 298 F.2d 516 (5 Cir. 1962). Later, an investigator was sent by the Secretary to see if Nunn's Battery was complying with the injunction. As a result of this investigation, the Secretary asserted that two maids were within the coverage of the Act and were being paid less than the minimum wage without the overtime premium required by the Act. In December 1962, the district court found that these maids were engaged in commerce and engaged in the production of goods for commerce and held Nunn's Battery to be in contempt of the previous judgment, ordering it to pay to the employees sums representing wage underpayments and to pay a compensatory fine representing costs and expenses of the investigation and prosecution of the action. Nunn's Battery has appealed from that order.

The question presented is whether these maids are engaged in commerce or engaged in production of goods for commerce within the meaning of the Fair Labor Standards Act. We conclude that the maids are engaged in the production of goods for commerce and thus do not find it necessary to decide whether they are engaged in commerce.

The wholesale business of Nunn's Battery has not changed since the time of the last appeal. Its sales are split evenly between welding supplies and automotive parts and supplies. Most of these items are purchased from out-of-state sellers, but only 3 to 5 per cent of its sales are to out-of-state consumers. Usually, the orders of its customers are filled from its own warehouses, though sometimes a special order must be filled by an out-of-state supplier or automotive parts must be sent back for repair or credit. Besides selling gas cylinders, it picks them up, repaints them, and sends them out of state for refilling.

■ The maids in question sweep in the aisleways and walkways between the rows of bins where parts are stored, mop the customer sales area and office area, assist in removing waste from the shipping and receiving clerk's area in the parts department, sweep the outside walkways and driveways, clean the rest rooms, and occasionally wash windows. They do not go into the welding department or onto the loading dock.

The Fair Labor Standards Act states that an employee shall be deemed to have been engaged in the production of goods for commerce if he was employed in "handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof." [1] The Secretary contends that when the shipping clerk takes supplies from the bins, wraps them, and loads them for shipment to customers, he is "handling, transporting, or in any other manner working on" them so as to be engaged in the production of goods within the meaning of the Act. Only about one per cent of these supplies, however, are sent to out-of-state customers. The Secretary also contends that the painting of the gas cylinders in preparation for their shipment to the out-of-state supplier or out-of-state purchasers is likewise production of goods for commerce. He then concludes that the maids are in a "closely related process or occupation directly essential" to this production because they sweep the area around the shipping clerk's counter, sometimes clear up the trash there, and pick up empty paint cans from near where the cylinders are painted, although they do not go onto the dock where the painting actually takes place.

---

1. Fair Labor Standards Act § 3(j), 29 U.S.C. § 203(j).

■ The wrapping and loading of supplies and the painting of cylinders are, indeed, production as defined in the Act, insofar as these items are shipped out of the state. Moreover, a number of cases have held that the work of maids and porters is closely related or directly essential to the production of goods for commerce. See A. B. Kirschbaum Co. v. Walling, 1942, 316 U.S. 517, 62 S. Ct. 1116, 86 L.Ed. 1638; Borden Co. v. Borella, 1945, 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1865, 161 A.L.R. 1258; Public Building Authority of City of Birmingham v. Goldberg, 5 Cir. 1962, 298 F.2d 367; Mitchell v. Dooley Brothers, Inc., 1 Cir. 1960, 286 F.2d 40, cert. denied, 366 U.S. 911, 81 S.Ct. 1086, 6 L.Ed.2d 236; Union National Bank of Little Rock, Ark., v. Durkin, 8 Cir. 1953, 207 F.2d 848.[2] Nunn's Battery, however, points to the relatively small amount of production for commerce and the relatively small part which this plays in the maids' work. It apparently wants us to apply the doctrine of *de minimis non curat lex*. In Mabee v. White Plains Publishing Co., 1946, 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607, the Supreme Court limited the application of the maxim *de minimis* insofar as the Fair Labor Standards Act is concerned: "Though we assume that sporadic or occasional shipments of insubstantial amounts of goods were not intended to be included in that prohibition, there is no warrant for assuming that regular shipments in commerce are to be included or excluded dependent on their

size."[3] The work of the maids here does not fall within the "sporadic or occasional" exception.[4] The maids regularly cleaned up around the shipping clerk's counter and regularly picked up empty paint cans. Moreover, supplies and gas cylinders were regularly sent into interstate commerce. That the relative volume of some of these activities may have been small is immaterial. Therefore, all that is further required is that the maids' work be closely related or directly essential to the production. The essential nature of this work is illustrated by the fact that during a period when there were no maids these functions were nevertheless carried out by other employees.

Nunn's Battery relies on 10 East 40th Street Building v. Callus, 1945, 325 U. S. 578, 65 S.Ct. 1227, 89 L.Ed. 1806, 161 A.L.R. 1263, in which the Supreme Court denied coverage to maintenance employees of an office building in which only 48 per cent of the rented area was occupied in the production of goods for commerce. We are of the opinion, however, that cases where the employer is the owner of an office building or is an independent contractor working for others present a distinct problem, and that Mabee v. White Plains Publishing Co., *supra*, still controls the instant case.

■ In addition, the appellant asserts that since in 1961 the Secretary did not claim coverage of the maids, Nunn's Battery should not have been "penalized" by the district court. This contention is without merit—by making its own

2. But see Addison v. Commercial Nat'l Bank, 5 Cir. 1948, 165 F.2d 937, which was questioned in Tobin v. Union Nat'l Bank, E.D.Ark.1953, 112 F.Supp. 702, 705, *aff'd sub nom.* Union Nat'l Bank v. Durkin, 8 Cir. 1953, 207 F.2d 848. The 1949 amendment to section 3(j) of the Act (Act of October 26, 1949, 63 Stat. 911) did not affect the validity of the Kirschbaum and Borden cases. See Union Nat'l Bank v. Durkin, supra.

3. 327 U.S. at 181–182, 66 S.Ct. at 512–513. Accord, United States v. Darby, 1941, 312 U.S. 100, 123, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430; Wirtz v. G & W Packing Co., 4 Cir. 1963, 324 F.2d 802, 803;

Southern Calif. Freight Lines v. McKeown, 9 Cir. 1945, 148 F.2d 890, cert. denied, 326 U.S. 736, 66 S.Ct. 46, 90 L.Ed. 439; New Mexico Public Service Co. v. Engel, 10 Cir. 1944, 145 F.2d 636, 640; cf. Wirtz v. Crystal Lake Crushed Stone Co., 7 Cir. 1964, 327 F.2d 455; Wirtz v. LaFitte, 5 Cir. 1964, 326 F.2d 856. We decline to follow Hill v. Jones, W.D. Ky.1945, 59 F.Supp. 569, 572, to the extent that it may be contrary to these cases.

4. This exception was applied in Mitchell v. Household Finance Corp., 3 Cir. 1953, 208 F.2d 667.

determination, Nunn's Battery acted at its peril. See McComb v. Jacksonville Paper Co., 1949, 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599.

In view of our finding that the employees are engaged in the production of goods for commerce, there is no need to decide whether they are "engaged in commerce." The judgment of the district court is

Affirmed.