Peter J. **BRENNAN**, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee,

v.

**METROPOLITAN TRASH, INC.**, a corporation, Defendant-Appellant.

No. 74–1200.

United States Court of Appeals, Tenth Circuit.

Argued Nov. 14, 1974.

Decided Jan. 13, 1975.

Certiorari Denied June 23, 1975.

See 95 S.Ct. 2656.

Donald S. Shire and Melanie Franco Nussdorf, Attys., U. S. Dept. of Labor (William J. Kilberg, Sol. of Labor, Carin Ann Clauss, Associate Sol. and Tedrick A. Housh, Regional Sol., U. S. Dept. of Labor, on the brief), for plaintiff-appellee.

Robert G. Shepherd, Jr., Denver, Colo. (William Andrew Wilson, P. C., Denver, Colo., on the brief), for defendant-appellant.

Before SETH, BARRETT and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

Metropolitan, the appellant, was adjudged by the district court to be liable under the Fair Labor Standards Act.[1] Damages were not in issue. It was stipulated that the back wages amounted to $10,485 covering the period from January 8, 1971 through August 27, 1973, and that thereafter the sum of $79.44 accrued each week. The sole issue on this appeal is whether Metropolitan's activities are covered by the Act. To be more specific, the issue is whether Metropolitan is an enterprise which had employees engaged in commerce or in the production of goods for commerce.[2]

---

1. 29 U.S.C. § 201 et seq.

2. Section 203(s) provides:

"Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise which has employees engaged in commerce or in the production of goods for commerce, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person, and which . . . is an enterprise . . . whose annual gross volume of sales made or business done is not less than $250,000 (exclusive of excise taxes at the retail level which are separately stated).

Section 203(b) defines
"Commerce" [as] trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof.
Section 203(i):
"Goods" means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof.

The action arises under Section 207(a)(1) of the subject Act which prohibits a workweek longer than 40 hours unless the employee is paid time and one-half for the hours in excess of 40 hours.

Basically, Metropolitan is a local corporation which collects trash from the premises of its customers and disposes of it. Its president testified that more than one-half of the trash hauled by it is collected from commercial customers and that at least 95% of its income is derived from commercial customers. There was testimony of six of Metropolitan's customers at the trial who said that they were engaged in the production of goods for commerce. The trial court so found and concluded. We affirm.

Manufacturers which were shown to have been served by Metropolitan included the following:

(1) Benjamin Moore Co.—paint manufacturer.

(2) Colorado Tanning & Fur Co.—custom tanning company.

(3) ITT, Continental Baking Co.—baking company.

(4) Cutler Hammer Co.—manufacturer of equipment for the newspaper industry.

(5) Packaging Corporation of America—manufacturer of paperboard.

(6) Skyline Corp.—manufacturer of mobile homes.

Metropolitan has authority from the Colorado Public Utilities Commission to provide trash removal service. It is required to provide the service to all members of the public who desire its services (for a price, of course).

Ordinary refuse is hauled and disposed of by Metropolitan. This consists of paper, metal, bottles, pieces of metal, etc. Several types of containers are furnished by Metropolitan according to the particular needs of the customer. These containers remain the property of Metropolitan but are in the possession of the customer.

A further factual stipulation was that at least 80% of Metropolitan's equipment and repair items are manufactured in states other than Colorado.

The work performed by Metropolitan's employees is to a large degree ordinary labor. No special training is given and the containers are placed in a manner which serves the convenience of the Metropolitan employees so that they are seldom required to enter the customers' premises. The services are performed within the confines of Denver.

The trial court found that "two or three employees of defendant's regularly engage in removal of trash or rubbish on a basis intimately related to the production of goods for commerce" and thereby their activities are directly related to the goods for commerce in that their efforts are essential to such production.[3]

It is apparent that the dispute presented is a legal one as to whether Metropolitan's services are closely related and directly essential to the production of goods for commerce.

The definition of "enterprise" contained in § 203(r) is also relevant:

"Enterprise" means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose.

3. The trial court elaborated as follows:

The Court finds the close connection between the manufacturing and distribution process of the six corporations and its clear dependence on rubbish disposal in this case. The Court further finds that the removal of trash from a facility used for the production of goods for commerce which facilities are defendant's customers is essential and necessary for the reasons being that there is a serious sanitation question and should the trash not be removed, it is rather apparent as to the sanitary conditions from all of the six businesses, especially the tanning company. Further that the failure to remove trash impairs the operation and it is questionable whether the six companies which the Court finds are rather representative of defendant's customers could operate to any degree of efficiency without rubbish and trash removal; that is quite likely that these businesses could not operate and would have cessation of the production of goods for commerce at said facilities.

It is to be recognized at the outset that the Fair Labor Standards Act does not utilize fully the powers granted by the commerce clause of the Constitution. Mitchell v. H. B. Zachry Co., 362 U.S. 310, 80 S.Ct. 739, 4 L.Ed.2d 753 (1960); Mitchell v. Lublen, McGaughy & Assoc., 358 U.S. 207, 79 S.Ct. 260, 3 L.Ed.2d 243 (1959); McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538 (1943); Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638 (1942). Thus, § 203(j) provides in part that "an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, *or in any closely related process or occupation directly essential to the production thereof, in any State.*" [Emphasis added.] We are, of course, concerned with the latter two clauses and, particularly, the final one in § 203(j) which says "or in any closely related process or occupation directly essential to the production thereof." It is agreed by Metropolitan that its employees regularly remove trash from the manufacturing facilities which are used for producing goods for commerce, and it is also conceded by Metropolitan that this activity is related and essential to their operation, so actually the only question here is whether their services are closely related to and directly essential to the production. In our opinion their activities meet the standard.

In Mitchell v. C. W. Vollmer & Co., 349 U.S. 427, 429, 75 S.Ct. 860, 99 L.Ed. 1196 (1955), the Supreme Court set forth in its opinion a test as to whether the activity was closely related and directly essential. The Court said at page 429, 75 S.Ct. at page 862:

> The test is whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity.

It is noteworthy that the corporate officers of the customer companies which have been listed above testified to the essential relationship of the trash hauling effort to the manufacturing process, and indeed it is impossible to conclude that the refuse disposal is something separate from the manufacturing process. It is not unlike a cleaning and maintenance service and this has been held to be vitally related to the production process. See Borden Co. v. Borella, 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1865 (1945); Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638 (1942); Nunn's Battery and Electric Co. v. Wirtz, 335 F.2d 599 (5th Cir. 1965); Mitchell v. Mercer Water Co., 208 F.2d 900 (3d Cir. 1953). It is arguable that the trash hauling or waste removal is even more closely a part of the manufacturing process than cleaning the premises, for example.

Most of the cases which deal with this question have held that there was coverage. Schultz v. Instant Handling, Inc., 418 F.2d 1019 (5th Cir. 1969); Mitchell v. Dooley Bros., Inc., 286 F.2d 40 (1st Cir. 1960), cert. denied, 366 U.S. 911, 81 S.Ct. 1086, 6 L.Ed.2d 236 (1961); Hodgson v. Elmer's Disposal Service, Inc., 68 CCH Lab. Cas. ¶ 32,706 (S.D.Cal.1972); Hodgson v. Superior Sanitation, Inc., No. C–3430, D.Colo., decided May 30, 1972; Wirtz v. DeBoer Bros., Inc., 51 CCH Lab. Cas. ¶ 31,695 (W.D.Ill.1965). Cf. Bledsoe v. Wirtz, 384 F.2d 767 (10th Cir. 1967), wherein defendant's employees received, sorted, fed and cared for cattle which belonged to others, but which were sold at defendant's auction. See also Crook v. Bryant, 265 F.2d 541 (4th Cir. 1959), wherein the employees operated a wrecker service which removed vehicles from roads which connected with interstate highways. Wirtz v. English, 245 F.Supp. 628 (D.Kan.1965) involved the hauling of salt water and sediment from customers' oil leases.

In *Dooley* defendant removed garbage and ashes from businesses engaged in the production of goods for commerce. It was found that the defendant was covered.

*Instant Handling* was a waste disposal system used by industrial concerns.

*Elmer's Disposal Service* was engaged in the collection and recycling of solid waste. It was held that the company was an enterprise which engaged in commerce.

*Superior Sanitation* was a trash and rubbish hauling case in which it was ruled that there was coverage.

*DeBoer Bros.* was a trash hauling case and was ruled to be within the Act.

Metropolitan relies on the decisions of Wirtz v. Modern Trashmoval, Inc., 323 F.2d 451 (4th Cir. 1963) and Barnett v. A–1 Scavenger Service Co., 466 S.W.2d 150 (Mo.App.1971). The Fourth Circuit reasoned that the connection of the trash disposal activity was indirect and, therefore, remote from the manufacturing process. The court relied on Mitchell v. H. B. Zachry, *supra,* in which the activity was factually remote from the production of goods for commerce.

The opinion in *Modern Trashmoval* stressed the necessity for substantial dedication to customers engaged in commerce. In that case it was estimated that only 10–15% of the defendant's customers were so engaged and it is thus distinguishable on its facts.

In our case there is a substantial part of Metropolitan's efforts which are devoted to manufacturers engaged in the production of goods for commerce. It is on this basis that we hold that in the case at bar the trial court was correct in finding that Metropolitan's services were closely related and directly essential to the production of goods for commerce. Metropolitan's efforts were shown by the evidence to have been an essential aspect of the manufacturing process in connection with the six large manufacturing firms whose officers testified at the trial.

In view of our determination that Metropolitan's services are an essential part of the production of goods for commerce, it is unnecessary to take up the alternative grounds for upholding the judgment, namely, whether Metropolitan

was shown to have been engaged in handling goods that have been moved in commerce.

We do not feel that it is essential to take up Metropolitan's further contention that it falls within the retail establishment exemption to the Act, § 13(a), 29 U.S.C. § 213(a)(2). The vast preponderance of Metropolitan's customers were shown to have been commercial entities. At least 95% of Metropolitan's business was shown to have been from firms engaged in commerce or manufacturing activities. No effort is made by Metropolitan to establish that services were furnished at the uniform rates and without wholesale type discounts. Thus, Metropolitan was not shown to have been a house to house collector but, rather, was engaged at the commercial level on a volume basis, and so we conclude that the trial court correctly found that Metropolitan failed to establish its status as a retail establishment entitled to the exemption.

The judgment is affirmed.