540 F.2d 454
 22 Wage & Hour Cas. (BN 1243, 79 Lab.Cas. P 33,417
 Peter J. BRENNAN, Secretary of Labor, United States
Department of Labor, Plaintiff-Appellee,
v.
J. G. CARRASCO, Individually and J. G. Carrasco, Inc., doing
business as J. C.Inc. Liquid Waste Disposal, a
corporation, Defendants-Appellants.
 No. 75-1443.
 United States Court of Appeals,
Ninth Circuit.
 Aug. 12, 1976.
 
 Ronald M. Telanoff (argued), Los Angeles, Cal., for appellant.
 Marcia Lurensky (argued), and Jacob Karro (argued), of Fair Labor Standards Div., Dept. of Justice, Washington, D. C., for appellee.
 OPINION
 Before KOELSCH, TRASK and KENNEDY, Circuit Judges.
 TRASK, Circuit Judge.
 
 
 1
 In this action the Secretary of Labor sought to enjoin the defendants-appellants from violating the overtime requirements of the Fair Labor Standards Act[1] and to restrain the continued withholding of back wages to their employees under the Act.
 
 
 2
 After a hearing on cross motions for summary judgment based on a Joint Statement of Facts, the trial court upheld the Secretary's position that appellants' business was a covered "enterprise" within the meaning of Section 3(s)(1) of the Act and that it was therefore required to comply with overtime provisions.[2] Judgment was entered requiring payment of back wages with interest.
 
 
 3
 This appeal challenges the ruling that the business is a covered enterprise and also the order requiring appellants to make restitution of unpaid wages.
 
 
 4
 The trial court made extensive findings of fact which we do not find to be clearly erroneous and which tell us that the corporate defendant, J. G. Carrasco, Inc., operates a liquid waste disposal service (known generally as J. C. Inc. Liquid Waste Disposal) in El Monte, California. J. G. Carrasco, the individual defendant, manages the firm. The company is engaged in the pickup, transportation (by means of tank trucks), disposal and dumping of liquid waste, primarily for industrial and commercial concerns. At least 99 percent of defendants' business is performed for industrial firms which produce goods for interstate commerce and for airlines engaged in interstate transportation. Throughout the period covered by this action, November 1971 to December 1974, defendants' annual gross volume of business exceeded $250,000.
 
 
 5
 During the period in question, at least two of defendants' employees rendered liquid waste removal services each workweek for at least one of the following industrial customers: Standard Oil, Chevron Oil, Chevron Chemical, Alcan Aluminum, Norris Industries, McCulloch Corporation and Shell Oil. Each of these companies produces goods which are sold and delivered to places outside the State of California. The liquid waste which defendants' employees remove from these customers' premises is a by-product of their manufacturing processes and, as the district court found, if the waste is not removed "the industrial concerns would curtail or cease to produce (the) goods."
 
 
 6
 Similarly, during each workweek since May 1972, at least two of defendants' employees performed liquid waste disposal services for one or more of the following airlines: Western, United, American and Continental. Each of these airlines is engaged in transporting passengers and materials to and from places outside the State of California. The liquid waste is generated by cleaning and repairing airplane parts at the airlines' repair facilities. The district court found that if the waste is not removed "the airlines would curtail or cease to clean and repair their airplanes at Los Angeles International Airport."
 
 
 7
 The parties stipulated as to the precise nature of defendants' waste removal activities with respect to two typical customers: Norris Industries and Western Airlines. It was agreed that Western Airlines was and is engaged in interstate commerce and that Norris Industries produces goods for interstate commerce.
 
 
 8
 It was further stipulated that "Norris Industries would curtail or cease production without the disposal of its liquid waste," and that "Western Airlines will curtail or cease the cleaning and repair of their airlines (sic) if the liquid waste engendered from the cleaning cannot be disposed of legally." Moreover, it was undisputed that the airline customers "engaged in the transportation of passengers, materials, and communications to and from places outside the State of California" and that the "industrial concerns have been engaged in the production of goods which have been and are being sold, delivered, or shipped to places outside the State of California."
 
 
 9
 Upon review of these established facts, the district court found, inter alia, that:
 
 
 10
 "Defendants' employees who remove liquid waste from the premises of concerns engaged in the production of goods for commerce perform work which is a closely related occupation directly essential to the industrial firm's production of goods for commerce. Therefore, those employees are engaged in the production of goods for commerce within the meaning of Section 3(j) of the Act (29 U.S.C. 203(j)).
 
 
 11
 "The work performed by defendants' employees is directly and vitally related to a functioning of an instrumentality of commerce. Therefore, the employees are engaged in commerce within the meaning of Section 3(b) of the Act (29 U.S.C. 203(b))."
 
 
 12
 We cannot say that these facts found by the court are clearly erroneous or that the conclusions of law based upon these facts are invalid.
 
 
 13
 In Schultz v. Instant Handling, Inc., 418 F.2d 1019, 1022 (5th Cir. 1969), the court held that "the removal of industrial waste and other debris" from the premises of major producers of goods for interstate commerce was "essential to the continued operation of their . . . businesses" and therefore clearly constituted an occupation or business directly essential to the production of goods for commerce. Similarly, in Mitchell v. Dooley Bros. Inc., 286 F.2d 40, 44 (1st Cir. 1960), cert. denied, 366 U.S. 911, 81 S.Ct. 1086, 6 L.Ed.2d 236 (1961), employees of a trash removal service were held to be "closely related" and "essential" to the production of goods for commerce when they removed rubbish and trash from concerns which produced goods for commerce. See also Brennan v. Metropolitan Trash Inc., 513 F.2d 1324 (10th Cir.), cert. denied, 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 693 (1975); Rural Fire Protection Co. v. Hepp, 366 F.2d 355 (5th Cir. 1966).
 
 
 14
 Those services necessary to complete the cycle of production, as well as those services necessary for its beginning, are essential to the cycle and its continuance. We therefore hold that the employees of defendants-appellants, J. C. Inc., Liquid Waste Disposal, a corporation, and its manager, J. G. Carrasco, individually, who regularly remove liquid waste from plants producing goods for interstate commerce and perform services for enterprises directly related to interstate commerce are engaged in the production of goods within the meaning of section 3(j) of the Act, 29 U.S.C. § 203(j) and section 3(b) of the Act, 29 U.S.C. § 203(b). Thus, all of defendants-appellants' employees are covered under section 7(a)(1) of the Act, 29 U.S.C. § 207(a)(1), and are subject to its minimum wage and maximum hour provisions.
 
 
 15
 Appellants also contend that the district court erred in ordering restitution of unpaid overtime wages due under the Act. They insist that Brennan v. Saghatelian, 514 F.2d 619 (9th Cir. 1975), compels such a result. We disagree. Even a cursory examination of the opinion in Saghatelian discloses that the facts there were unique and presented an overwhelming case against the court's exercise of its restitution jurisdiction. The court, therefore, declined to exercise its jurisdiction. In this case the trial court was not so persuaded and understandably so. We declined to reverse the trial court's judgment in Saghatelian and decline to do so here.
 
 
 16
 It appears that the trial court's equitable jurisdiction was properly exercised in each instance.
 
 
 17
 The judgment is affirmed.
 
 
 
 [1]
 Act of June 25, 1938 c. 676, 52 Stat. 1060, as amended; 29 U.S.C. § 201 et seq
 
 
 [2]
 Pertinent parts of the Act are as follows:
 "SEC. 3. As used in this Act
 "(b) 'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof.
 "(i) 'Goods' means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof.
 "(j) 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State.
 "(r) 'Enterprise' means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose * * *
 "(s) 'Enterprise engaged in commerce or in the production of goods for commerce' means an enterprise which has employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and which
 (1) * * * beginning February 1, 1969, is an enterprise whose annual gross volume of sales made or business done is not less than $250,000 (exclusive of excise taxes at the retail level which are separately stated); . . ."