W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Appellant,

v.

IDAHO SHEET METAL WORKS, INC., a Corporation, Appellee.

Nos. 18887, 18888.

United States Court of Appeals Ninth Circuit.

Aug. 10, 1964.

Rehearing Denied Sept. 15, 1964.

Charles Donahue, Sol. of Labor, Bessie Margolin, Associate Sol., Robert E. Nagle, Caruthers G. Berger, Attys., U. S. Dept. of Labor, Washington, D. C., Altero D'Agostini, Regional Atty., San Francisco, Cal., for appellant.

Eli A. Weston, Vestal Coffin, Boise, Idaho, for appellee.

Before POPE, HAMLEY and MERRILL, Circuit Judges.

POPE, Circuit Judge.

The Secretary of Labor brought two actions in the court below for the purpose of enforcing compliance by the defendant Idaho Sheet Metal Works, Inc. with certain requirements of the Fair Labor Standards Act.[1] In one action the Secretary sought to enjoin further violations by the defendant of the overtime provisions of the Act.[2] In the other action the Secretary sought recovery of unpaid overtime compensation on behalf of one of the defendant's employees.[3] The two actions were consolidated for trial and after dismissal of the actions by the trial court, with prejudice, the

1. Act of June 25, 1938, c. 676, 52 Stat. 1060, as amended by Fair Labor Standards Amendments of 1949, c. 736, 63 Stat. 910, 29 U.S.C. § 201 et seq. Other amendments of 1961 (75 Stat. 65) are not material here.

2. Such injunction proceedings are authorized by Sec. 17 of the Act (29 U.S.C. § 217).

3. Such an action is authorized by Sec. 16(c) of the Act (29 U.S.C. § 216(c)).

appeals therefrom were consolidated for hearing in this court.

The facts here are undisputed. It is conceded that during the years 1959 through 1961, the defendant did not pay its employees, some twelve in number, in accordance with the overtime provisions of the Fair Labor Standards Act, and it is admitted that this practice has continued thereafter. It was stipulated that if recovery was had in the action to recover the employee's overtime compensation, recovery should be for the sum of $500 plus costs.

Upon the trial and in this court two questions were presented. The first question was whether any of the defendant's employees were engaged in the production of goods for commerce within the meaning of the Act. Since the record shows that the defendant's employees were engaged in the performance of work for its customers who were producing goods for interstate commerce, the query, stated more particularly, was whether defendant's employees were engaged in a "closely related process or occupation directly essential" to the interstate production of its customers.[4]

The second question presented is whether the defendant is a retail establishment exempt from the requirements of the Act under Sec. 13(a).[5] The trial court found against the Secretary on both questions.

During the years 1959 through 1961, the defendant was engaged in manufacturing, installing, maintaining and repairing equipment made of sheet metal for five large potato processors located in the general area of Burley, Idaho, where defendant's place of business was located. During that period 83 per cent of defendant's gross income was derived from those customers. In addition it performed comparable work for five other companies which were engaged in producing goods for interstate commerce including sugar mills, flour mills, seed and grain companies, and a container corporation. This accounted for an additional 3 per cent of defendant's gross income. The equipment which defendant fabricated or repaired for these companies included tanks of a capacity to hold 5,000 pounds of peeled potatoes, hoods for carrying off steam, and elevator buckets and chutes for transferring items within the plants.[6] During many weeks

4. The section of the Act relevant in this regard is Section 3(j) which reads: "Sec. 3. As used in this Act— (j) 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this Act an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State."

5. The relevant portions of Section 13 read as follows: "Sec. 13(a). The provisions of sections 6 and 7 [the Act's minimum wage and overtime requirements] shall not apply with respect to * * * (2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located. A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry; or * * * (4) any employee employed by an establishment which qualifies as an exempt retail establishment under clause (2) of this subsection and is recognized as a retail establishment in the particular industry notwithstanding that such establishment makes or processes at the retail establishment the goods that it sells: Provided, That more than 85 per centum of such establishment's annual dollar volume of sales of goods so made or processed is made within the State in which the establishment is located; * * *."

6. The employees were sheet metal workers and they were employed at defendant's sheet metal plant which was a high ceilinged cinderblock building. The building was not equipped with any of the facilities common in a retail establishment in that it had no display windows, sales counters or cash registers.

in those years the employees of defendant spent a substantial part of their total work hours in these activities relating to the fabricating of equipment for the customers mentioned. A substantial portion of this work was carried on in the customer's plant.

In dealing with the question whether the defendant's employees were engaged in production of goods for commerce within the meaning of Sec. 3(j) of the Act, the court, while finding in so many words that the defendant's business was "not closely related to nor directly essential to the production of goods for or in commerce," [7] based its conclusion upon its finding that the defendant's "enterprise is a local business". The reasoning adopted by the trial court was that once it had determined that the employer was engaged in a "local business" it followed that his employees could not be engaged in the production of goods for commerce.

The trial court was led to this reasoning by its interpretation of the decision in Mitchell v. H. B. Zachry Company, 362 U.S. 310, 80 S.Ct. 739, 4 L.Ed.2d 753. While it is true that the opinion in that case contains certain references to "local business", to "activities of a dominantly local character", to "primarily local activities", and to "local production", we think that the trial judge was misled by the use of these phrases, and that, contrary to the trial court's opinion, the Zachry decision does not hold that employment in "a local business" excludes it from being treated as employment in the production of goods for commerce.

The court below fell into the same error which led to the decision of the Court of Appeals for the Fourth Circuit in Mitchell v. Lublin, McGaughy & Assoc., 250 F.2d 253, 259. In that case the em-

ployees involved were draftsmen, field clerks and stenographers employed by an architectural firm. All of these employees worked with plans and specifications prepared by their employer for the repair and construction of various interstate instrumentalities including air bases, roads, radio and television installations. The Court of Appeals held that "[t]he defendants in this case were independent engineers and architects engaged in essentially local activity in each of the offices which they maintained." Referring to the fact that the firm sent telegraph messages, and used the mails to transmit documents to other states, the court said (pp. 259–260): "[W]here the business is essentially local and there is no production of 'goods', communication which is merely incidental to the local enterprise cannot be classed as commerce. * * * [T]he Act does not attempt to regulate local activity. * * * [T]he architectural work itself was local and of necessity gave color to the activities of their subordinates and took them outside the scope of the statute." After grant of certiorari this judgment of the Court of Appeals was reversed, Mitchell v. Lublin, McGaughy & Asso., 358 U.S. 207, 211, 79 S.Ct. 260, 264, 3 L.Ed.2d 243. The Supreme Court noted that the decision of the lower court was based upon its conclusion that the activities of the employing firm were "local in nature". It held, however, that in order to determine whether these employees were engaged in commerce "we focus on the activities of the employees and not on the business of the employer." Said the Court (p. 212, 79 S.Ct. p. 264): "The test is 'whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical

---

The equipment consisted of work benches and machinery for working on sheet metal. The metals used in the fabrication mentioned were primarily stainless steel, galvanized iron, black iron plate, aluminum and copper. The fabricated and installed equipment was not maintained in stock by the defendant but it was made to order in each case.

7. Note that so stated this is not precisely the question involved under the Act which states the important query to be whether "such employee was employed * * * in any closely related process or occupation directly essential to the production thereof, in any State." (Emphasis added.)

effect, a part of it, rather than isolated local activity.' * * * Respondent contends that *its* activities are essentially local in nature. But as we stated, Congress deemed the activities of the individual employees, not those of the employer, the controlling factor in determining the proper application of the Act. Here the activities of the employees show clearly that they are 'engaged in commerce' and thus are eligible for the protections afforded by the Act."

It is important to note that in the language just quoted the Supreme Court first inquired whether the work of the employees is "directly and vitally related to the functioning of an instrumentality or facility of interstate commerce." If that question is answered in the affirmative then it can be said that the enterprise is not a local activity. It is obvious that the Court of Appeals in that case, as did the court below in this case, began its inquiry at the wrong end by first asking whether the enterprise was a "local activity". As the Supreme Court in the Lublin case, above, made clear, that is in no sense the test.

In the Zachry case, supra, upon which the trial court relied, the respondent employer was a construction contractor employed to construct a dam for impounding water for a water district to supply water to the City of Corpus Christi. An unspecified amount of the water supplied by the district was consumed by facilities and instrumentalities of commerce. It was plain here that neither the city nor the district was engaged in the production of goods for commerce. The Court held in that case "neither a facility of 'commerce' nor a facility of 'production' is under construction. Operation of the completed dam will merely support production facilities; and construction of the dam is yet another step more remote."

(362 U.S. p. 319, 80 S.Ct. p. 745) Thus the decision is based upon the Court's finding of the remoteness of the construction from any facility of commerce or of production that might be within the terms of the Act, and not upon any finding that the construction work was of "a local character." [8] In setting forth the test to be applied in a case of this kind the Court made it plain that an answer to the problem presented cannot be predicated upon a finding as to whether the enterprise carried on by the employer is local or otherwise. The Court alluded to (p. 315, 80 S.Ct. p. 743) "the governing principle that coverage turns upon the nature of the employees' duties, and not upon the nature, local or interstate, of the employer's general business."

A Supreme Court case whose facts most closely resemble those in the case now before us is Roland Co. v. Walling, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383 (1949). Roland Co. was engaged in manufacturing, installing, and servicing electrical motors, generators, etc. A substantial portion of its business was done with companies directly engaged in interstate commerce. During practically every work week Roland's mechanics did some of this work for some of these customers, either in the repair of their motors or generators, in the reconstruction of used motors sold to them, or in performing electrical work at their establishments. It was held that these employees were engaged in the production of goods in interstate commerce and that they were within the coverage of the Act.

The court below declined to follow the Roland case on the ground that the 1949 amendment of the Act [9] undercut its authority, holding that the later case of Zachry, supra, disclosed that the Roland case was no longer good law.

8. After finding the construction to be too remote from any production of goods for commerce to be either "closely related" or "directly essential" to production, it was not inappropriate for the Court to conclude that it was dealing with something which had a "local character".

9. In 1946 Sec. 3(j) instead of referring as at present, to "any closely related process", etc., used the words *"any process or occupation necessary to the production thereof,* in any State." By the 1949 amendment the italicized words just quoted were changed to the language of

In a later portion of this opinion we shall have occasion to point out the very limited effect which the 1949 amendment had with respect to the authority of Roland. The legislative history of the 1949 amendment shows beyond doubt that the holding in Roland that those employees were engaged in the production of goods in interstate commerce and were within the coverage of the Act, would not be affected by the 1949 amendment. During the discussion of the amendment on the floor of the Senate, Senator Holland, the main sponsor of the amendment, answering a question whether Roland would "be decided any differently under the proposed amendment," answered "definitely not". (95 Cong.Rec. 12505.) And in connection with the Conference report on the bill, the House Managers reported: "The bill as agreed to in conference also does not affect the coverage under the act of employees who * * * make, repair or maintain machinery or tools and dies used in the production of goods for commerce. * * * All the employees mentioned in this paragraph are doing work that is closely related and directly essential to the production of goods for commerce." (Conference Report, Statement of the House Managers, U.S.Code & Cong.Serv., 81st Cong., 1st Sess. 1949, p. 2253.)

■ This brings us to the question which, as indicated in the Lublin case, supra, must be answered to resolve the first point presented here. We inquire whether the work of these employees of defendant was "so directly and vitally related to the functioning" of these potato processors, sugar mills, etc., as to be in practical effect a part of those interstate enterprises. In the words of the Act, the inquiry is whether these employees were engaged "in any closely related process or occupation directly essential" to the production which was carried on by the potato and sugar processors, etc., previously mentioned. We think it is plain that the answer must be in the affirmative.

■ As we have indicated above, the trial court, besides holding that these employees were not covered by the Act, held also that defendant was exempt from the Act's minimum wage and overtime requirements by reason of its being recognized as an establishment engaged in retail sales or services in the industry.[10] It is plain that this finding of the court was predicated upon testimony which defendant offered to the effect that within the industry the defendant's business was and is considered to be retail. We think that such is not an appropriate basis upon which to determine whether the retail exemption applies to the defendant in this case. In Mitchell v. Kentucky Finance Co., 359 U.S. 290, 79 S.Ct. 756, 3 L.Ed.2d 815, the defendant had succeeded in the Court of Appeals in maintaining its assertion of the retail exemption on the ground that "their activities are recognized in the financial industry as being 'in the retail end' of the industry." In reversing the decision of the Court of Appeals, the Supreme Court made it plain that even though an establishment's activities might be recognized as being retail in the particular industry, the establishment does not come within the meaning of the retail exemption unless its business falls within the "retail concept" of the Act. We had occasion to note this in Goldberg v. Roberts, 9 Cir., 291 F.2d 532, 534. As we there said: "if by its nature appellees' business is 'outside the retail concept, the Section 13 exception cannot apply."

the Act which now reads "any closely related process or occupation directly essential to the production thereof in any State."

10. The court's opinion stated as follows: "The Court finds from the evidence that all of defendant's sales were within the State of Idaho and its products were not sold for resale. The Court also finds from the evidence that the business conducted by defendant was and is considered to be retail within the industry as shown by the testimony of the manager of defendant corporation and representatives of companies selling materials to defendant."

The trial court here decided that defendant's business was within the retail concept in the following manner: It noted that in Roland, supra, the Supreme Court had held that concern outside the retail concept. There the Court said (326 U.S. p. 666, 66 S.Ct. p. 417): "[T]he exemption reaches employees of only such retail or service establishments as are comparable to the local merchant, corner grocer or filling station operator who sells to or serves ultimate consumers who are at the end of, or beyond, that 'flow of goods in commerce' which it is the purpose of the Act to reach." It seems obvious that if the tests applied in the Roland case are applied here, we must conclude that the defendant is not within the retail exemption.

The trial court disregarded the Roland test stating that the retail concept described in Roland "was repudiated by the 1949 amendment to the Act", citing Mitchell v. Kentucky Finance Co., supra. But the latter case shows that the 1949 amendment served no such purpose. The Roland case had indicated approval of a rule to the effect that sales of goods or service for "business use" were not retail. The Kentucky Finance case shows, as does the legislative history of the 1949 amendment, that the sole purpose of that amendment was to do away with this "business use" test. The Court said: "We find nothing in the debates or reports which suggests that Congress intended by the amendment to broaden the fields of business enterprise to which the exemption would apply. Rather, it was time and again made plain that the amendment was intended to change the prior law only by making it possible for business enterprises otherwise eligible under existing concepts to achieve exemp-

tion even though more than 25 percent of their sales [were not retail under the old business use test]." 359 U.S. at 294, 79 S.Ct. at 759. To the same effect see Goldberg v. Roberts, supra. That the 1949 amendment had this limited effect is clear from the legislative history of that amendment.[11]

■ When we consider all the facts in the present case, the operation in a factory-like building equipped only for manufacture and repair of the fabricated metal products, with a substantial portion of the time of its employees devoted to fabricating large metal equipment for use by potato processors, sugar mills and similar enterprises, we cannot agree that the enterprise fell within the retail concept described and referred to in these decisions.

In addition we should note that the 1949 amendments to the Act recited that prior rulings by the Administrator with respect to enterprises within or without the retail exemption should remain in effect unless inconsistent with the statute as amended. In his 1942 Wage and Hour Manual, p. 326, secs. 29–31, the Administrator listed types of business which were outside the retail exemption and which were similar to the business of the defendant. Among these were "machine shops and foundries", "industrial blacksmiths" and "establishments engaged in sharpening and reconditioning industrial tools."

We hold that the defendant was not engaged in business within the retail exemption provisions of Sec. 13 of the Act.

The judgments are reversed and the causes remanded with direction to enter judgments for the appellant.

11. Representative Lesinski, one of the Managers for the House, referring to a reference to Roland in the House Managers' Statement, stated that this reference "should not mislead anyone into concluding that the conference intended to reverse or nullify that decision" (95 Cong.Rec. 14942).

The Senate Conferees' report stated that the amendment did not change the status of establishments "selling industrial goods and services to manufacturers engaged in the production of goods for interstate commerce and to other industrial and business customers (such as the establishment in Roland Electrical Co. v. Walling, (326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383.)" (95 Cong.Rec. 14877.)