507 F.2d 472
 22 Wage & Hour Cas. (BN 46, 75 Lab.Cas. P 33,178
 Peter J. BRENNAN, Secretary of Labor, United States
Department of Labor, Appellant and Cross-Appellee,
v.
Thomas E. KEYSER, Individually, and d/b/a Keyser Towing
Company, Appellee and Cross-Appellant, and Oscar Shepard,
Individually, and Hollenbeck Tow Service, A Corporation,
Appellees and Cross-Appellants.
 Nos. 72-2887, 72-2960, 72-2888 and 72-2961.
 United States Court of Appeals, Ninth Circuit.
 Nov. 25, 1974
Certiorari Denied March 31, 1975
See 95 S.Ct. 1446.
 
 Donald S. Shire (argued), Counsel for App. Litigation, U.S. Dept. of Labor, Washington, D.C., for appellant.
 G. G. Baumen (argued), Los Angeles, Cal., for appellee and cross-appellant.
 Before CHAMBERS and CHOY, Circuit Judges, and McNICHOLS,* District judge.
 OPINION
 CHOY, Circuit Judge:
 
 
 1
 The Secretary of Labor brought these actions to enforce the overtime pay provisions of Section 7, Fair Labor Standards Act, 29 U.S.C. 207. The defendant companies (Keyser and Shepard) operate automobile towing services in the Los Angeles area. The district court dismissed both actions, concluding that although Keyser and Shepard were engaged in interstate commerce and therefore were within the court's jurisdiction under the Act, they were exempt from its overtime regulations. During the years in question, the court found, the companies had met the requirements of the retail sales and services exemption, 29 U.S.C. 213(a)(2). The Secretary appeals from the dismissal, and Keyser and Shepard appeal from the district court's finding that they are engaged in interstate commerce.
 
 Factual Background
 
 2
 The Los Angeles Police Department has designated both towing companies as 'Official Police Garages' (OPG) and official impound stations for prescribed geographic areas of the city. No contractual relationship has ever existed between the Police Department and an OPG. The Department prescribes rules which an OPG must adhere to, however, if it is to retain its OPG designation. The OPG must observe a schedule of maximum rates for towing and storage services performed as a result of police activity, for example. Tow trucks must be of a certain color and bear OPG insignia, and must carry prescribed equipment. Tow truck drivers must wear standard uniforms. Regulations set minimum standards for storage lots, protection and handling of vehicles, and the safeguarding of property inside the vehicles. Each OPG is limited to a prescribed geographic area of operations, within which it has a monopoly on police referrals. An OPG not only benefits from handling police impoundments; when a citizen asks the police for a tow or roadside assistance without specifying a preferred towing company, the police will call the OPG assigned to that area.
 
 
 3
 A training bulletin of the Los Angeles Police states that an OPG is an agent of the Police Department. Tow truck drivers are commissioned Special Officers and are required to report observed criminal activity without delay. Although an OPG is not restricted to police calls and does accept calls directly from individuals needing assistance, the parties stipulated that 'almost all' of Keyser's calls were police requests. Substantially more than half of Shepard's calls appear to have been from the police.
 
 
 4
 The towing companies received no compensation from the police for vehicles impounded and stored. The owner of the vehicles paid the towing and storage charges directly to the towing company, the vehicle then being released from impoundment. Unclaimed vehicles were sold to satisfy the serviceman's lien which attached to them.
 
 
 5
 Portions of two Interstate Highways (I-5 and I-10) pass through Shepard's area of operation. No Interstate Highway passes through Keyser's area, but seven percent of his calls are on a portion of the Harbor Freeway which connects the Long Beach area and I-405 to the south with I-5 and I-10 to the north.
 
 Fair Labor Standards Act
 
 6
 Congress in enacting the Fair Labor Standards Act, established certain standards for payment of overtime compensation by employers of workers engaged in interstate commerce. 29 U.S.C. 207. It exempted, however, retail or service establishments meeting certain requirements. 29 U.S.C. 213(a)(2). A 'retail or service establishment' is defined as an establishment at least 75 percent of whose 'annual dollar volume of sales' is not for resale and is recognized as retail 'in the particular industry'. Such a retail or service establishment is exempt from the Act's standards if its 'annual dollar volume of sales' is less than $250,000, and at least 50 percent of which are in the state where the establishment is located.[1]
 
 Interstate Character of the Services
 
 7
 In their cross-appeal, the towing companies contend that their services are local in character, with no substantial impact on interstate commerce. In Gray v. Swanney-McDonald, Inc., 436 F.2d 652 (9th Cir.) cert. denied, 402 U.S. 995, 91 S.Ct. 2173, 29 L.Ed.2d 161 (1971), we held that tow truck drivers doing a portion of their work on Interstate or U.S. Highways were engaged in interstate commerce, and therefore were within the coverage of the Act. We remain convinced of the soundness of that decision. We observed in Swanney-McDonald that although the contact of any one company with interstate traffic might be small, the cumulative impact of the entire towing industry was substantial. To exempt Keyser from the Act's regulation because the Harbor Freeway is a state highway, but require Shepard's compliance because the Santa Ana Freeway has been designated an Interstate Highway, would be to miss the point of Swanney-McDonald. We were less concerned in that case with the formal designation of a highway than with the reality of its utility to interstate commerce. The towing companies' concern that this test leaves no room for purely local commerce would be better argued in another case; here, we rely on the trial judge's knowledge of local conditions in finding that the Harbor Freeway is so interconnected with the area's interstate highways as to be an instrumentality of interstate commerce.
 
 Retail Nature of the Services
 
 8
 In arguing that Keyser and Shepard do not fall within the retail sales or service exemption, 29 U.S.C. 213(a)(2), the Secretary contends that they have not met their burden of showing that 75 percent of their services were recognized as retail 'in the particular industry'. One witness, the president of the Official Police Garage Association, testified that towing was recognized as retail by the auto tow service industry.
 
 
 9
 The district court found that all of the companies' sales and services were recognized as retail in the industry. The Secretary argues that recognition by the industry is not synonymous with recognition in the industry. We agree, but we observe that evidence proving the first also tends to prove the second. The companies were required to show recognition in the industry in order to claim the exemption. Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 393, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960). We cannot say, however, that the testimony offered that towing services are recognized as retail by the industry was not substantial evidence that they are so recognized in the industry, nor that the trial judge's finding was clearly erroneous.
 
 
 10
 Mitchell v. City Ice Co., 273 F.2d 560 (5th Cir. 1960), cited as authority by the Secretary, actually supports the companies' position. In City Ice, the Fifth Circuit held that uncontested testimony showing recognition by the industry did not entitle the defendants to a directed verdict on the issue of recognition in the industry; instead it remanded the case for a jury trial on the issue: 'The weight to be given (the industry witnesses') opinions was, of course, to be weighed in light of their self-interest as well as the reasoning with which they supported them. It was not proper for the trial court to take the case from the jury.' Id. at 562. Similarly, we rely on the findings of the trier of fact in this instance.
 
 
 11
 Although we accept the findings of the district court that the companies met the statutory requirements of the retail sales or service exemption, we find another barrier to their inclusion within that exemption. The rather broad statutory definition of a 'retail or service establishment' has been narrowed by judicial decision. Not only must the particular sales or services in question be recognized as retail in the industry, but the industry itself must be one which Congress contemplated as falling within the 'retail concept'. Wirtz v. Idaho Sheet Metal Works, Inc., 335 F.2d 952, 956 (9th Cir. 1964), aff'd, 383 U.S. 190, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966). Unlike the district court's finding that the services were recognized as retail in the industry, the question whether the industry itself falls within the retrail concept of the Act is one of law-- of statutory interpretation.
 
 
 12
 Congress granted the Secretary a large measure of discretion in administering the Act. Idaho Metal Works, 383 U.S. at 205, 86 S.Ct. 737. The Secretary has utilized his expertise in compiling lists of industries whose sales possess or lack a retail character. 29 C.F.R. 779.317 and 779.320. The automobile towing industry is on neither list. Opposing counsel expend considerable ingenuity drawing analogies between the towing industry and businesses found on one list or the other. The Secretary urges that towing companies perform the same function as ambulance companies and thus are part of the transportation industry which possess no retail character; the companies counter that they more closely resemble auto repair shops and service stations, whose services are recognized as retail.
 
 
 13
 The district court found the companies' position more persuasive. We prefer, however, to go behind these analogies and root our decision in the congressional purpose in enacting the retail exemption. The legislative history contains repeated expressions of concern for 'the grocery store, the hardware store, the coal dealer, the automobile dealer selling passenger cars or trucks, the clothing store, the dry goods store, the department store, the paint store . . ..' Idaho Metal Works, 383 U.S. at 203, 86 S.Ct. at 746, quoting House Conf.Rep. at 25. See A. H. Phillips, Inc., v. Walling, 324 U.S. 490, 497 n. 7, 65 S.Ct. 807, 89 L.Ed. 1095 (1945). Most of these retailers deal in consumer goods, although sales of farm implements and small trucks also fall within the retail concept. Idaho Metal Works, 383 U.S. at 203, 86 S.Ct. 737. The nature of the merchandise seems less important than the nature of the merchant. Adoption of the retail exemption was an effort to balance the needs of the small town or neighborhood merchant against the welfare of employees. The frequent allusions in the legislative history to the 'corner grocer' suggests a desire by many Congressmen to shield from rigid regulation the informal business methods and record keeping of Main Street businessmen who, in dealing directly with the consumer, need a greater flexibility in hours, wages, and conditions of employment than do those businesses dealing principally with other commercial establishments.
 
 
 14
 We venture no opinion regarding the retail nature of independent towing services. For the purposes of the retail exemption, however, towing services which derive a large proportion of their business from police calls are a distinct activity from those whose assistance is requested directly by the automobile owner. The close relationship between proprietor and customer which characterizes the 'Main Street' businessman is absent. Keyser and Shepard emphasize that they have no formal contract with the police. This argument overlooks the symbiosis between police and towing company. In exchange for a monopoly of police calls in a specified area, the companies consent to a large measure of police regulation, even of such details as color of the trucks, uniforms of the drivers, prices charged, and equipment used.
 
 
 15
 The parties stipulated that almost all of Keyser's business and most of Shepard's was derived from police calls. An OPG manager signed a statement that 'I understand that my designation as an Official Police Garage may be revoked upon proper finding of the Board that I or any of my employees have violated the rules herein agreed'. The police training bulletin thus seems fully justified in asserting that: 'Official Police Garages are a group of towing operations providing service to both the citizens and the Department and, as such, act as agents of the Department'. The companies' actual customer is the government. The vehicle owner's sole relationship to the towing company in the typical case is to pay the fee extablished by the Board of Police Commissioners in order to free his vehicle from impoundment. He is apt to view the towing company as quasi-governmental in nature. In both appearance and reality, these companies work hand in hand with the municipality in performing a service to the general public, often to the annoyance of the 'customer' whose car has been impounded. Despite the absence of a formal contract, the companies have sold a major portion of their services to the city in exchange for a limited monopoly of the city's business.
 
 
 16
 Exceptions to humanitarian and remedial legislation must be narrowly construed. Only those businesses clearly within both the terms and spirit of the exemption should be allowed to benefit from it. A. H. Phillips, Inc. v. Walling, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095 (1945). The towing companies have failed to convince us that Congress intended a business of this nature to be exempted from the Act's regulations as a retail extablishment.
 
 
 17
 The finding of the district court that the towing companies engaged in interstate commerce and thus fell within the jurisdiction of the Act is affirmed. Its holding that the retail sales and service exemption applies to Keyser and Shepard, and its dismissal of the Secretary's complaint, are reversed. The case is remanded to the district court for a determination whether the overtime pay provisions of the Act were in fact violated.
 
 
 18
 Affirmed in part; reversed in part and remanded.
 
 
 
 *
 Honorable Ray McNichols, United States District Judge for the District of Idaho, sitting by designation
 
 
 [1]
 Fair Labor Standards Act 13(a)(2), 29 U.S.C. 213(a)(2):
 (a) The provisions of . . . (Section 7) shall not apply with respect to-- (2) any employee employed by any retail or service establishment . . . if more than 50 per centum of such establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located . . . (if) such establishment has an annual dollar volume of sales which is less than $250,000 (exclusive of excise taxes at the retail level which are separately stated). A 'retail or service extablishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry;