W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

CRYSTAL LAKE CRUSHED STONE COMPANY, Defendant-Appellee.

W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

Clarence R. WOLF and Harold Wolf, Partners, d/b/a Wolf Trucking Service, Defendant-Appellee.

Nos. 14232, 14233.

United States Court of Appeals Seventh Circuit.

Feb. 4, 1964.

Charles Donahue, Sol., Dept. of Labor, Washington, D. C., Herman Grant, Regional Atty., Chicago, Ill., Bessie Margolin, Assoc. Sol., Robert E. Nagle, Beate Bloch, Attys, U. S. Dept. of Labor, Washington, D. C., for appellant.

Anthony M. Werner, Sheboygan, Wis., Miller, Hayes & Werner, Sheboygan, Wis., of counsel, for appellee.

Before CASTLE, KILEY and MAJOR, Circuit Judges.

CASTLE, Circuit Judge.

The Secretary of Labor brought these two actions[1] in the District Court for injunctive relief under Section 17 of the Fair Labor Standards Act, as amended, 29 U.S.C.A. § 201 et seq. In No. 14232 Crystal Lake Crushed Stone Company is charged with violating the Act's overtime provisions with respect to employees engaged in the quarrying, processing and handling of sand and gravel on Crystal's premises. In No. 14233 Wolf Trucking Service[2] is charged with violating both the overtime provisions and record-keeping requirements[3] with respect to employees engaged in the handling and transportation of sand and gravel. The facts are stipulated. The District Court, after making and entering findings of fact and conclusions of law, denied the relief sought and dismissed the complaints. The Secretary prosecuted an appeal in each of the cases.

The record discloses that Crystal's gravel pit is located at Elkhart Lake, Sheboygan County, Wisconsin. Through washing and crushing processes it produces sand, stone of two sizes, gravel, and chips or pea gravel from the "pit-run" it excavates or quarries. The chips are a by-product. Crystal employs six persons in its production, processing and handling activities. During the years 1958, 1959, and 1960, Crystal sold 597,-066 tons of these materials from which it grossed $519,740. During this three year period it sold 17,403 tons of chips to the Sheboygan County, State Highway Commission for $13,112. The chips were used in the repair and maintenance of roads and highways.

Two major customers of Crystal, Van Der Vaart Brick and Building Supply Company and J.P.R. Company, who manufacture and sell ready-mix concrete, concrete pipe and concrete blocks, purchased all of their sand and stone requirements from Crystal. Each of these firms operates a ready-mix concrete plant and delivers its ready-mix concrete to contractors and other purchasers by pouring it at the job-site from its own vehicles, specially designed trucks equipped with revolving cylinders to hold and transport the freshly mixed concrete.

1. The actions were consolidated by this Court for purposes of appeal.

2. Clarence R. Wolf and Harold Wolf, partners, doing business as Wolf Trucking Service, referred to herein as Wolf.

3. The pertinent provisions of the Act provide:

29 U.S.C.A. § 207(a) "(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed;
* * *"

29 U.S.C.A. § 211(c) "Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder."

During the three year period referred to these two customers purchased a total of 349,193 tons of sand and stone from Crystal. Except after March, 1959, when J.P.R. commenced to haul about one-third of its purchases from Crystal's premises in its own trucks, Wolf transported all of this tonnage from Crystal's premises to the plant of either Van Der Vaart or J.P.R. Crystal billed these customers for the transportation charge and paid it to Wolf. Wolf employs between 5 and 7 persons, mostly truck drivers engaged in such transportation, and received $258,552 for such services. All other customers of Crystal, including the Highway Commission, transported their purchases from Crystal's premises in the purchaser's own vehicles.

In addition to its above trucking activities, Wolf furnished employees and supplied materials in connection with the construction and reconstruction of streets, parking lots, and sanitary sewers, house excavations, and farm driveways. This type of work was normally performed by Clarence R. Wolf and one or two other employees, who operated a caterpillar tractor, a back hoe, and an air hammer. The materials for this type of work were hauled to the job-site by one, two, or three of the truck drivers, depending on the nature and size of the project. The type of work performed by Wolf on streets, roads and highways included the spreading of gravel on road surfaces.

About 58 per cent of Crystal's total sales were to Van Der Vaart and J.P.R., and approximately 16 per cent of the tonnage so represented was used in the manufacture of ready-mix concrete and concrete culvert pipe sold and delivered by Van Der Vaart or J.P.R. to purchasers using it in the repair of highways, roads and city streets.

The District Court recognized that the public streets, roads and highways involved are instrumentalities of interstate commerce[4] but concluded that Crystal's "off-the-road" employees were producing "essentially 'local materials'" which "lost their identity as stone products processed by Crystal" before being "poured over into the stream of interstate commerce when Van Der Vaart and J.P.R. sold them as ingredients of ready-mix concrete and precast concrete products." The court noted that "the ultimate purchasers for use of the ready-mix concrete * * * were too far removed" from Crystal; that "Crystal had neither knowledge nor control of the ultimate use to which the stone products it furnished J.P.R. and Van Der Vaart would be put"; that neither of these purchasers was obligated to buy all of its sand and stone requirements from Crystal (although in fact they did so), and that "for all Crystal knew" they might have sold their whole output for "uses other than the maintenance of instrumentalities of interstate commerce." Crystal's sales of gravel chips to the Highway Commission, the court concluded, "were sporadic and occasional and could not be relied on by Crystal" and that such sales of a byproduct did not bring Crystal within the coverage of the Act.

With respect to Wolf's truck drivers, the court concluded that the trucking activities from Crystal's premises to the plants of Van Der Vaart and J.P.R. were "incidental to Crystal's operation" and likewise were "well removed from the stream of interstate commercial activity." With respect to the deliveries made by Wolf's truck drivers to job-sites at which Wolf's other employees were working the court concluded that it did not appear that the deliveries of materials were "specifically" to the jobs involving maintenance of instrumentalities of interstate commerce.

In our considered judgment the conclusion of the District Court that

---

4. Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656; Goldberg v. P. & L. Equipment Co., 5 Cir., 311 F.2d 88; Austford v. Goldberg, 8 Cir., 292 F.2d 234; Mitchell v. Brown, 8 Cir., 224 F.2d 359 and Emulsified Asphalt Products Co. v. Mitchell, 6 Cir., 222 F.2d 913.

Crystal's direct sales of chips did not bring those of its employees engaged in the excavation and processing of the "pit-run" and handling of the resulting products within the coverage of the Act is clearly erroneous. We find no support in the record for a finding or conclusion that such sales were sporadic or isolated occasional exceptions. They occurred regularly in each of the years involved during several months and represented substantial quantities. That the chips were by-products is not of import. Mitchell v. Jaffe, 5 Cir., 261 F.2d 883; Tilbury v. Mitchell, 5 Cir., 220 F.2d 757 (affirming and adopting the reasoning of the District Court in 123 F.Supp. 109); Walling v. Peoples Packing Co., 10 Cir., 132 F.2d 236. That these purchases accounted for only approximately 3 per cent of Crystal's tonnage and about 2.5 per cent of its receipts is likewise of no material significance. Congress "has made no distinction as to the volume or amount of shipments in the commerce or of production for commerce by any particular shipper or producer. It recognized that in present day industry, competition by a small part may affect the whole and that the total effect of the competition of many small producers may be great". United States v. Darby, 312 U.S. 100, ·123, 61 S.Ct. 451, 461, 85 L.Ed. 609. The rationale of Darby was reiterated in Mabee v. White Plains Publishing Co., 327 U.S. 178, 181–182, 66 S.Ct. 511, 90 L.Ed. 607, and applied in Mitchell v. Pilgrim Holiness Church Corp., 7 Cir., 210 F.2d 879, 882. The fact that Crystal's activity was entirely "off-the-road" production of materials does not serve to insulate it from coverage. Cf. Alstate Construction Co. v. Durkin, 345 U.S. 13, 73 S.Ct. 565, 97 L.Ed. 745; Thomas v. Hempt Bros., 345 U.S. 19, 73 S.Ct. 568, 97 L. Ed. 751; Mitchell v. Hooper Equipment Company, 5 Cir., 279 F.2d 893. And as to these sales Crystal was chargeable with knowledge that the chips were to be used in the repair and maintenance of instrumentalities of interstate commerce. It was bound to know the status of the Highway Commission and its intended use of the chips in road work. Mitchell v. Raines, 5 Cir., 238 F.2d 186. Cf. Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83; D. A. Schulte, Inc. v. Gangi, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114.

■ Turning to consideration of the District Court's findings and conclusions with respect to Wolf we likewise find no support for the court's denial of injunctive relief. While it accepts Wolf's concession that those of its employees— other than its truck drivers—those who engage in activities such as road maintenance and repair, are within the coverage of the Act it rejects coverage for the truck drivers on the basis that such a conclusion would involve an assumption it finds not warranted—that there were deliveries of materials to Wolf's road maintenance and repair job-sites by the truck drivers. The court, in referring to the stipulated deliveries, states: "It does not appear that these deliveries were specifically to jobs involving maintenance of instrumentalities of interstate commerce".

In our opinion a fair appraisal of the stipulation—reading the language in its context—not only fails to justify the effect the court ascribes to it but compels a contrary inference. The pertinent portion of the stipulation is as follows:

"In addition to the trucking activities [hauling from Crystal's premises to Van Der Vaart and J.P.R.] Wolf furnished employees and supplied materials in connection with the construction and reconstruction of streets, parking lots, and sanitary sewers, house excavations, and farm driveways. This type of work was normally performed by Clarence R. Wolf, defendant, and one or two other persons employed by Wolf. These persons operated a caterpillar tractor, a back hoe, and an air hammer. The materials for this type of work were hauled to the job site by one, two, or three truck drivers, depending on the nature and size of the project.

(1) The type of work performed by Wolf on streets, roads and highways consisted of excavating and digging out of road beds, spreading gravel on road surfaces, and other types of general hauling and excavating work that could be performed from behind the wheel of a truck or tractor. * * * "

It is expressly stipulated that the type of street, road, and highway work involved included the spreading of gravel. This would normally be material hauled to the job-site and it is stipulated that Wolf supplied materials for such road work. Moreover, general hauling done by truck in connection with road work would normally include materials for the work. Considering the language of the stipulation in the light of its context we see no basis for deleting the road and street work from the "type of work" for which materials were hauled by the truck drivers—one, two, or three depending on the nature and size of the project—merely because road and street work is not "specifically" singled out. None of the work categories are so singled out with reference to the material hauling activity of the truck drivers. And the road and street work is included in the activities referred to as "this type of work" normally performed by Clarence R. Wolf and one or two others and with respect to which materials were hauled to the job-site by the truck drivers.

In view of the conclusions we have reached on the phases of the appeals which we have discussed we find it unnecessary to consider the relevance of the sales and transportation of the sand and stone used by Van Der Vaart and J.P.R. to the basic issue presented in either appeal. The act applies to the particular employees and truck drivers involved, in any event. And it would serve no useful purpose to extend this opinion to consider the impact of the additional sales of Crystal and trucking activity of Wolf on the issue we have already resolved on the basis of the factors we have considered.

The judgment order of the District Court in each of the appeals is reversed and each of the causes is remanded with directions that the District Court enter a decree in each granting appropriate injunctive relief in accordance with the views herein expressed.

Reversed and remanded with directions.