W. Willard WIRTZ, Sec. of Labor, U. S. Dept. of Labor, Appellant,

v.

Ignazio INTRAVAIA et al., Appellees.

No. 20856.

United States Court of Appeals Ninth Circuit.

March 15, 1967.

Charles Donahue, Sol. of Labor, Bessie Margolin, Associate Sol., Robert E. Nagle, Atty., Donald Shire, Atty., John Orbin, Atty., Dept. of Labor, Washington, D. C., Altero D'Agostini, Regional Atty., Dept. of Labor, Los Angeles, Cal., for appellant.

Merrill Albert, Los Angeles, Cal., for appellees.

Before BARNES, DUNIWAY and ELY, Circuit Judges.

DUNIWAY, Circuit Judge:

The appellant, Secretary of Labor, brought this action to enjoin further violations of the overtime and record-keeping requirements of the Fair Labor Standards Act, 29 U.S.C. §§ 207 & 211 (c). After a trial, the trial court concluded that appellees' employees were not within the coverage of the Act, and judgment was entered for appellees. We reverse.

The Act covers employees who are "engaged in commerce or in the production of goods for commerce," a phrase which recurs in many sections (29 U.S.C. §§ 202(a), 203(s), 206(a) (b), 207(a), 208 (a), 212(c)). The sole question presented is whether appellees' employees were "engaged * * * in the production of

goods for commerce." This brings into play section 203(j):

" 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State."

We consider the facts in the light of these statutory provisions.

Most of the facts are stipulated; there is no substantial conflict in the evidence. Appellee Intravaia, with his wife, is owner of appellee I & I Trucking, Inc., a corporation. Both appellees have the same place of business, in El Monte, California. The business is hauling. Appellees employed about 26 people, about 20 of whom were drivers. These drivers used appellees' equipment to haul sand, gravel, bulk cement, asphalt and other materials from points of origin to various contractors at construction sites. These contractors were engaged in building and repairing freeways, streets, roads, and highways. Some materials were also delivered to the Los Angeles International Airport and to the March Air Force Base to be used in the construction and improvement of runways. The bulk cement was picked up at cement plants and hauled to the sites and placed in bulk containers for later use by the contractors in making concrete. The sand, gravel and other materials were picked up at their origin and dumped at the construction sites, often directly on the roads at the direction of the contractors. All hauling was done within California. The materials were produced by others; they were processed by the contractors, not by appellees.

The freeways to which materials were hauled are used regularly for the transportation of goods and persons in interstate commerce; the streets, roads and highways are traversed regularly by vehicles of the United States Post Office in the transportation of mail, and are used for the transportation of persons and goods in interstate commerce; the Los Angeles International Airport and March Air Force Base are used regularly for the transportation of persons and goods in interstate commerce.

The district court concluded that the employees were not covered by the Act. Its findings are in general terms, and are in part self-contradicting. Thus, paragraph III of the amended complaint alleges that appellees' employees "are engaged in the production of sand, gravel and cement for commerce." The court found that these allegations are true. It then found that the facts are substantially as recited above, that appellees are not engaged in the production of goods for commerce, and that neither appellees nor any of their employees are engaged in commerce. As a conclusion of law the court states that the employees are not engaged in the production of goods for commerce. It also found that appellees did not pay the drivers on an hourly or daily basis, but paid them "a very substantial part of the amount received for trucking each load," and that appellees did not keep records showing the number of hours necessary for each trip and did not compensate the drivers for work performed in excess of 40 hours per week.

It would appear, then, that if there is coverage, the Secretary is entitled to the injunction he seeks. He does not claim that the employees or appellees are engaged in commerce; his position is that they are engaged in the production of goods for commerce. He relies heavily on section 203(j), quoted above. We think that he is right.

First, it bears emphasis that "the provisions of the Act expressly make its application dependent upon the character of the employees' activities. And, in any event, to the extent that his employees are 'engaged in commerce or in the production of goods for commerce', the employer is himself so engaged." (Frankfurter, J., in A. B. Kirschbaum Co. v.

Walling, 1942, 316 U.S. 517 at 524, 62 S.Ct. 1116 at 1120, 86 L.Ed. 1638) Or, as the court put it in Mitchell v. Lublin, McGaughy & Associates, 1959, 358 U.S. 207, 211, 79 S.Ct. 260, 264, 3 L.Ed.2d 243: "we focus on the activities of the employees and not on the business of the employer." See also Walling v. Jacksonville Paper Co., 1943, 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; Mitchell v. C. W. Vollmer & Co., 1955, 349 U.S. 427, 75 S.Ct. 860, 99 L.Ed. 1196; Wirtz v. Idaho Sheet Metal Works, Inc., 9 Cir., 1964, 335 F.2d 952.

■■ It follows that it is immaterial that appellees do not in fact produce the commodities that they haul or do any processing of them in the course of hauling or after they are delivered. They may still be producing goods for commerce within the meaning of the Act: "Mere separation of the economic processes of production for commerce between different industrial units, even without any degree of common ownership does not destroy the continuity of production for commerce." D. A. Schulte Inc. v. Gangi, 1946, 328 U.S. 108, 121, 66 S.Ct. 925, 931, 90 L.Ed. 1114. See also Mitchell v. Hooper Equip. Co., 5 Cir., 1960, 279 F.2d 893, 896.

■ Second, the statute itself makes it clear that "production of goods for commerce" includes "transporting" goods for commerce. And decisions of the Supreme Court construing the statute, we think, require us to hold that appellees' employees are covered by the Act. Most pertinent are the companion cases of Alstate Const. Co. v. Durkin, 1953, 345 U.S. 13, 73 S.Ct. 565, 97 L.Ed. 745; and Thomas v. Hempt Bros., 1953, 345 U.S. 19, 73 S.Ct. 568, 97 L.Ed. 751. *Alstate* held that offsite employees of a contractor who constructed and repaired interstate roads are covered. *Thomas* held that the quarry employees of a producer of cement who supplied those building interstate highways were also covered.

The reasoning of *Alstate* was that the employees actually on the site were "in commerce" under the decisions in Over-

street v. North Shore Corp., 1943, 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656, and `Pedersen v. J. F. Fitzgerald Const. Co., 1943, 318 U.S. 740, 63 S.Ct. 558, 87 L.Ed. 1119, and that therefore those producing goods for those working on interstate facilities were engaged in the production of goods for commerce: "In *Overstreet* we pointed out that interstate roads and railroads are indispensable 'instrumentalities' in the carriage of persons and goods that move in interstate commerce. We then held that because roads and railroads are in law and in fact integrated and indispensable parts of our system of commerce among the states, employees repairing them are 'in commerce.' Consequently he who serves interstate highways and railroads serves commerce. By the same token he who produces goods for these indispensable and inseparable parts of commerce produces goods for commerce". (345 U.S. at 16, 73 S.Ct. at 567)

It should be noted that the company in *Alstate* manufactured the topping material it used in highway construction and repair; it quarried the materials and worked them up, then delivered the mix and put it down. There was no question that the workers on the site were covered by the Act; only the workers at the quarry and those delivering the mix were in question. The drivers transporting the material to the scene of the highway construction were included in the opinion. This is clear from the fact that they were involved in the lower court's decision (see 95 F.Supp. at 587) and from the generality of the opinion in *Alstate*— all offsite employees of the company were involved in the coverage of the decision. That the drivers were included is emphasized by the restatement of the holding in Justice Douglas' dissent: "The Court reasons that if the man who is building or repairing an interstate highway is 'engaged in commerce,' the one who carries the cement and gravel to him from a nearby pit is 'engaged in the production of goods for commerce.'" (345 U.S. at 17, 73 S.Ct. at 568) Thus *Alstate* tells us that the drivers who de-

liver road material from the manufacturing plant to the site are covered, at least if the one who is doing the manufacturing and the application employs the drivers. We mention these two conditions only because they are facts that were present and that are different from the facts at bar. They were not stressed by the Court as determinative of anything in the opinion, nor can we see their relevance in light of the opinions directing our attention to the activities of the employees.

In *Thomas* the Court held that employees who produce and handle the raw materials in its preparation for use on interstate transportation facilities are covered by the Act. This was on the authority of *Alstate*, decided the same day. The quarry owner in *Thomas* not only worked up the material for road work, but also hauled it to the sites. There is no distinction between employees in either *Alstate* or *Thomas*, and the two cases taken together cover employees who haul road materials for employers who produce the material and put it on the road, and employees who haul the materials for producers who deliver to another company which puts it on the road.

The appellees, asking us to say that these cases do not cover the present case, insist that because the employer here did not actually make the material for application, the truck drivers, doing exactly the same job as the drivers in *Alstate* and *Thomas* are not covered. This, we think, flies in the face of the decisions that we have previously cited, that it is the activities of the employees that are controlling. In substance, appellees are asking us to hold that if the contractor working on the interstate facility in *Alstate* and the quarry owner supplying material to such a facility in *Thomas* had subcontracted their hauling, the employees of the subcontractor would not be covered by the Act. This is squarely contrary to the ruling in D. A. Schulte Inc. v. Gangi, which we have quoted above.

Finally, the Secretary asks us to rule upon a question of law that is stated in a pre-trial order:

"If an employee is paid on a straight percentage or trip basis, with no payment of additional amounts for hours worked in excess of forty per week, but he earns a sum on such straight percentage or trip rate basis, which is in excess of the amount he would have earned had he worked an equal number of hours at the applicable union rate, have defendants violated 29 U.S.C. § 207."

The record, however, does not tell us whether the facts assumed in the question are true. We must decline what is really a request that we render an advisory opinion. It will be for the trial court to determine, on remand, whether appellees have violated the overtime provisions of the Act. The findings do make it clear, and appellees admit, that they did not keep the records required.

The judgment is reversed and the matter is remanded for further proceedings consistent with this opinion.

BARNES, Circuit Judge (concurring):

I concur in the result reached by the majority.

Appellees' employees have been engaged in the hauling of sand, gravel and cement which ultimately go into the construction of roads and airport runways which are instrumentalities of interstate commerce. Alstate Const. Co. v. Durkin, 345 U.S. 13, 73 S.Ct. 565 (1953), makes it clear that essential elements which become a part of such instrumentalities are goods for commerce within the meaning of the Fair Labor Standards Act. Since appellees' employees are engaged in the "transportation" of such goods, under section 203(j) they are deemed to be engaged in the "production" of such goods. The conclusion must be that appellees' employees are engaged in the production of goods for commerce, and are therefore subject to the provisions of the Act.

I concur in the result because I feel that such a decision is required by *Alstate*. I cannot accede, however, to the majority's suggestion (last two sentences of second paragraph of the majority opinion) that we are only applying the statutory language to the facts of this case.

The exercise of reason does not reconcile the result we reach here with the power of Congress to regulate commerce "among the several States," U. S. Const. Art. I, § 8. There is a connection between appellees' activities and interstate commerce just as every human activity affects commerce in some slight way. But does that mean that Congress has the power to regulate every phase of human activity? I think not. Here there can be little doubt that appellees were not engaged in commerce "among the several States." Few would assert that Congress can by fiat "deem" a person to be within its commerce power unless that person is in fact engaged in interstate commerce, since Congress cannot grant itself powers and be consistent with the Tenth Amendment.

I do not suggest that this statute is unconstitutional as beyond the powers of Congress. Congress has limited the reach of this act to persons engaged in commerce or the production of goods for commerce, defining "commerce" in section 203(b) as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." By its very terms the statute is within the commerce power. But I think we distort this language in reaching our conclusion.

Here it is reasonable to expect that the materials transported by appellees' employees will never leave the state of California. Congress by section 203(j) deems appellees' employees to be producers of these "goods", but the operative parts of the statute apply only if the goods are produced "for commerce" within the meaning of section 203(b). The sand, gravel and cement will never be traded, transported, transmitted or communicated among the several States or between any State and any place outside thereof. They will be mixed and spread upon the ground, and their function will be to remain where they are placed for decades, perhaps centuries. Commerce within the meaning of the Fair Labor Standards Act may move over the road which they will become, but I can see no logical justification for saying that these goods are themselves "for commerce" among the several States within the meaning of either section 203(b) or Art. I, § 8.

Nevertheless, I concur in the court's result. In *Alstate* the Supreme Court decided that road building materials are goods produced for commerce within the meaning of the Fair Labor Standards Act. We are bound to accept and must follow that decision. The sole purpose in offering this separate discussion is to point out that the result is reached by following binding authority, rather than by interpreting a statute.