W. Willard **WIRTZ**, Secretary of Labor,
United States Department of Labor,
Appellant,

v.

**STANDARD CONTAINER AND PAPER
COMPANY, Inc., et al.,** Appellees.

No. 24333.

United States Court of Appeals
Fifth Circuit.

Oct. 16, 1967.

Bessie Margolin, Associate Sol., Dept. of Labor, Robert E. Nagle, Carin Ann Clauss, Attys., Dept. of Labor, Washington, D. C., Charles Donahue, Sol. of Labor, Helen W. Judd, Attys., United States Dept. of Labor, Washington, D. C., Beverley R. Worrell, Regional Attorney, for appellant.

H. Robert Koltnow, Miami, Fla., for appellees.

Before TUTTLE and WISDOM, Circuit Judges, and HEEBE, District Judge.

TUTTLE, Circuit Judge:

This was an action brought by the Secretary of Labor under provisions of the Fair Labor Standards Act, 29 U.S. C.A. § 201 et seq., seeking injunctive relief to enjoin appellees from future violations of the Act's minimum wage and overtime requirements and to enjoin future violations of back wages. Coverage is included in three categories: (1) "Engaged in commerce," (2) "Engaged in production of goods for commerce," and (3) "or closely related processes or occupations directly essential to producing goods for commerce."

During the period in question of April, 1963, through August, 1965, appellee Standard Container and Paper Company, Inc., engaged in wholesale sale of paper and cardboard products in Miami. Such products included cardboard boxes and containers, tape and other miscellaneous paper products. The general mode of operation of appellee was to purchase its paper products from both local and out of state suppliers. Appellee purchased approximately 70% of its products from suppliers located within Florida and 30% from suppliers outside Florida. Appellee received and stored the products in its warehouse for a period ranging from several days to several months. As the district court found, purchases fere not made to fulfill any special or particular orders, but were made on the basis of anticipating the needs of its customers and keeping as stock a sufficient supply for the coming orders. The products sold by appellee were sold in the same form as they were bought, except, as testified to by appellee, in infrequent occasions when wooden crossbars would have to be placed within the boxes.

Many of appellee's customers were engaged in the garment trade and they purchased cardboard boxes and related products from appellee to ship their manufactured goods to out of state purchasers. Appellee itself made no direct shipments from the warehouse in Miami to destinations outside Florida.

A chart of appellee's customers in the garment industry might be useful:

| Customer (Witness) | Percentage of Carton Requirements Purchased | Percentage of Products Shipped Out of State |
|---|---|---|
| Sun Togs (Susmann) | 15–25% | 75% |
| Proper Sportsware (Rosen) | 80% | 50–60% |
| Michelle & Missy Miss (Goldfine) | 53% | 90% |
| Ed Kolber, Inc. | 100% | 70% |
| Flair (Fried) | 50% | 33⅓% |
| Caressa Shoes (Townsend) | 59.5–75.8% | 94.6–97.4% |
| Alix (Kraus) | 25–30% | 60% |
| Bunny's Casuals (Jacobsen) | 25–40% | 60–65% |
| Pierce-Simpson (Palmer) | 3–5% | 85–90% |

Appellee's employees concerned were in three categories: warehousemen, truck drivers and the clerical worker. The warehousemen were used indiscriminately in all of the various operations occurring at appellee's establishment, including receiving and unloading of the container merchandise, the placing of the products in storage and preparation and loading of merchandise for delivery to appellee's various customers in the Miami area. The truckers were generally engaged in making deliveries of merchandise locally from appellee's

warehouse to the various customers served by appellee in the Miami area. The clerical worker prepared orders received from appellee's customers and prepared invoices, billed them and received payments and was in charge of supervising the local orders operations; this clerical worker did not order or check goods received from out of state suppliers.

■ The parties stipulated the hours and wages and amounts due should coverage be found. The district court correctly found that the appellee regularly received substantial quantities of goods from sources outside Florida and all of the warehouse employees indiscriminately assisted in the receiving of and storage of these goods in appellee's warehouse and that the receiving and storing of goods, coming from sources outside the state, were unquestionably covered activities and such employees were "engaged in commerce." See Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460 (1943); Mitchell v. Royal Baking Co., 219 F.2d 532 (5 Cir., 1965); McComb v. Herlihy, 161 F.2d 568 (4 Cir., 1947); Sucrs. De A. Mayol & Co. v. Mitchell, 280 F.2d 477 (1 Cir., 1960); Wirtz v. Durham, Sandwich Co. D.C., 259 F.Supp. 710 (1956).

However, the district court applied the "state of rest" doctrine that the interstate journey of the container and shipping products ended when these goods came to rest in the appellee's-wholesaler's warehouse and were therein intermingled with the mass of property within the state and boxes and containers thereafter were only locally distributed in intrastate commerce. The district court found that even if the ultimate purchaser was a producer who then used the boxes and containers for its products to be shipped in interstate commerce, interstate commerce did not again commence until the other producer (garment manufacturer) actually used the container for such purpose.

In deciding that the trucker and clerical employees for whom the Secretary here sued under the Fair Labor Standards Act were not covered employees, the trial court seems to have overlooked the statutory definition of "Production" of goods for commerce, 29 U.S.C.A. § 201 et seq. This definition (section 3(j) of the Act) says: "Produced" means "produced, manufactured, mined, handled or in any other manner worked on in any State." Section 3(j) further states that: "For the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, *handling, transporting,* or in any other manner working on such goods * * * " (Italicizing supplied.)

■ By definition the truck drivers here were engaged in handling and transporting the paper products at the commencement of their known and destined use by the purchasers from the appellee in interstate sales. They were, therefore, engaged in "production for commerce," if not actually "in commerce" itself.

■ The clerical employee was so involved in the same sales and shipments to these purchasers for interstate use as to require a holding that her activities were "closely related" and "directly essential" to the production activities above described. See Wirtz v. Pepsi Cola Co. of Augusta (5 Cir.), 342 F.2d 820; Borden Co. v. Borella, 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1865.

The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.