W. Willard **WIRTZ**, Secretary of Labor, United States Department of Labor

v.

**RAY SMITH TRANSPORT COMPANY.**

Civ. A. No. 4645.

United States District Court
E. D. Texas,
Tyler Division.

Jan. 5, 1968.

During the period in question and regularly, subsequent to July 1, 1964, Defendant has been engaged in business as a specialized motor carrier under a certificate of authority issued by the Texas Railroad Commission. It has been exclusively engaged in the handling, transportation and delivery of gasoline, kerosene and diesel fuel.

Throughout the period, Defendant has employed approximately seventeen truck drivers for supplying this transportation service within a radius of one hundred miles from the City of Tyler, Texas. These employees were paid on a commission basis, receiving twenty per cent (20%) of the earnings of the trucks they drove. The records reveal that these employees worked from forty to eighty hours per week, and it is undisputed that these employees did not receive any overtime compensation for their hours in excess of forty per week.

Charles Donahue, Sol., Washington, D. C., M. J. Parmenter, Regional Atty., and Truett E. Bean, Trial Atty., U. S. Dept. of Labor, Dallas, Tex., for plaintiff.

White, McElroy & White, Adair Dyer, Jr., Dallas, Tex., and Christopher & Bailey, T. S. Christopher, Fort Worth, Tex., for defendant.

## MEMORANDUM AND ORDER

GARZA, District Judge.

This is a suit by the Secretary of Labor, United States Department of Labor, instituted under Section 17 of the Fair Labor Standards Act of 1938, as amended.

This Court has jurisdiction by virtue of the Act. The Secretary of Labor is seeking an injunction to restrain violations of Sections 7 and 11(c) of the Act, including restraint against further withholding any overtime compensation which the Court may find due Defendant's employees.

The Defendant, Ray Smith Transport Company, is a Texas corporation and maintains a place of business and truck terminal in Tyler, Texas.

The Plaintiff is claiming that Defendant's employees were engaged in the production of goods for commerce, as prescribed by Section 7(a) (1) of the Act and as defined by Section 3(j) of the Act. Therefore, Plaintiff says that the employees are entitled to the overtime compensation as the Act calls for.

Juxtaposed to this, the Defendant says, first, that his employees are not covered by the Act; or, in the alternative, even if the employees are covered, they are subject to one or more of the exemptions provided by Section 13(a) (2) or 13(a) (4) or 13(b) (1) of the Act. Therefore, Defendant says he is not legally obligated to pay any overtime wages either for past, present or future wages.

Both sides have fought vehemently and extensive briefs have been filed after an evidentiary hearing.

The facts in this case are numerous, and effort will be made only to include the pertinent ones.

Not all of the customers or consignee-users of the petroleum products were included in stipulation of facts. A representative sample of fifty-six (56) such

customers was taken and a detailed study was made of these.

The record shows that practically all of the transportation service performed by the Defendant has been that of transporting gasoline, kerosene and diesel fuel for Texaco, Inc., the Humble Oil and Refining Company, the Gulf Oil Company, and the Skelly Oil Company.

Almost all of the petroleum products were picked up at the Premier Oil Refinery, Longview, Texas, the La Gloria Oil Refinery, Tyler, Texas, the American Petrofina Refinery, Mt. Pleasant, Texas, the Texaco Oil Pipeline Terminals, Washom and Center, Texas, or the Gulf Oil Corporation Terminal, Big Sandy, Texas. These products were delivered by the Defendant directly to the establishments of the above mentioned four major oil companies, including their bulk stations (wholesale establishments) and their retail service stations, or directly to their customers.

It is stipulated that none of the petroleum products transported by Defendant subsequent to July 1, 1964, have had a prior movement in interstate commerce, where any state line was crossed.

Further, it is stipulated that all these products were delivered within the State of Texas, and no state lines were crossed enroute.

There is also no question but that Defendant's sole purpose and function is that of rendering a transportation service.

The Defendant has no ownership in any of the products he transports. Also, Defendant had nothing to do with the actual production of these goods. His service is strictly one of loading, transporting and delivering these petroleum products.

Mention was made earlier of the fifty-six customers who were chosen as an illustrative sample. These fifty-six were broken down into three groups called (A), (B) and (C).

Category (A) consists of twenty consignees (busline companies, truck line companies, and a railway company), and it is stipulated that each of these twenty used the delivered petroleum products as fuel in motor vehicles engaged in the transportation of persons or goods moving to or from places outside the State of Texas.

Category (B) contains twenty-three selected consignees (manufacturing companies, business firms, highway construction companies, crude oil producing company, and others). It is stipulated that each of these consignees "used the fuel in vehicles for transporting their products to customers and places outside of the State of Texas", or in process of manufacturing goods for interstate distribution, or in equipment used in the construction, relocation, or improvement of existing interstate highways, waterways, and a railway.

Category (C) consists of some thirteen customers; for example, the bulk stations or retail service stations owned by Humble, Texaco, Gulf, and Skelly. Defendant's employees regularly made deliveries to these customers. It is stipulated that some unsegregated part of this fuel "was regularly sold and distributed by these bulk stations or their 'retail service stations' for use in trucks and other vehicles engaged in the transportation of goods and persons to and from places outside of the State of Texas."

The Plaintiff rests its case on Defendant's services to these fifty-six customers, and alleges that this activity brings Defendant within the Act.

Defendant admits these acts, but says that such deliveries do not bear the necessary relationship to interstate activities to render the Act applicable, or if the Defendant does come within the Act, the Defendant is relieved by one of the exemptions.

■ After a searching look at the applicable law and cases, I find that the employees of Defendant are covered by the Act and are entitled to the overtime pay provisions.

In looking at the Act, the statutory definition of "Production" of goods for

commerce, 29 U.S.C. § 201 et seq., under subsection 3(j) of the Act, said "Produced" means "produced, manufactured, mined, handled, or in any other manner worked on in any State."

Section 3(j) further states that "For the purpose of this Act an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, *handling, transporting*, or in any other manner working on such goods * * *."

It is this definition which seals the lid on Defendant's liability.

Much of the refined petroleum products that Defendant transported, such as gasoline, kerosene and diesel oil, ended up in interstate commerce. It is admitted that some of this fuel supplied the energy to build, repair, construct interstate highways, waterways and a railway.

The fuel transported by Defendant's employees supplied the power for moving persons, products, etc., through interstate channels.

This transporting of the fuel by Defendant's employees, though entirely intrastate itself, was and is certainly a vital link in the production of goods for commerce.

Without fuel, no goods could be produced, and most assuredly not for commerce, because there could be no transportation between the States.

Also, the transporting of fuel is certainly closely related and directly essential to the production of goods for commerce.

I can think of new functions more vital or necessary to interstate commerce than the supplying of fuel.

The cases most controlling and analogous appear to be in accord with this view.

The Supreme Court, in Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638, held the Act applicable to employees of an employer who merely rented his building to tenants who produced garments which were sold and distributed outside the State. These employees had nothing directly to do with the production of these goods, nor with the movement of them into interstate commerce. These employees had the sole function of maintaining the building in which these garments were produced. The employees in question were elevator operators, watchmen, porters, carpenters and engineers.

The Supreme Court held that such employees were providing an important of goods for commerce. It said:

"Without light and heat and power the tenants could not engage * * * in the production of goods for interstate commerce.

"The maintenance of a safe, habitable building is indispensable to that activity."

In that case the employees were providing services important to those involved in interstate commerce.

Likewise in our case here the employees were providing an important service to those involved in interstate commerce.

In our case, the important service is the delivery of the fuel which enables these people to carry on their interstate activities which, as mentioned earlier, were and are numerous.

A case similar to *Kirschbaum* is Schulte Inc. v. Gangi, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114. The Supreme Court, dealing with similar facts as in *Kirschbaum*, held that the maintenance employees were covered by the Act.

A third Supreme Court case is Alstate Construction Co. v. Durkin, 345 U.S. 13, 73 S.Ct. 565, 97 L.Ed. 745. In that case, defendant produced a road building material called amesite. This substance was used in building interstate roads, highways, and railways. The Defendant's employees produced this amesite, delivered it to necessary locations and used it in repairing the roads, etc.

The District Court held that all these employees were engaged in the production of goods for commerce, including the employees who did nothing but deliver

the material from place to place. (Tobin v. Alstate Const. Co., D.C., 95 F.Supp. 585).

The Circuit Court affirmed, as did the Supreme Court. The Supreme Court said:

" * * * he who serves interstate highways and railroads serves commerce.

"By the same token, he who produces goods for these indispensable and inseparable parts of commerce produces goods for commerce."

The Defendant's employees in our case serve the interstate highways by transporting the fuel which highway contractors use in their equipment and machinery to build, construct and repair the interstate highways.

The recent case of Wirtz v. Intravaia, 375 F.2d 62 (9 Cir., 1967), cert. den. 389 U.S. 844, 88 S.Ct. 90, 19 L.Ed.2d 110, deserves mention. In this case the defendant's employees did nothing but haul sand, gravel, bulk cement, asphalt and other materials from points of origin to various contractors engaged in building, repairing, etc., of interstate highways, etc. The defendant provided strictly a hauling service; he had nothing to do with the actual producing, use, etc.

The Court held these employee truck drivers were "engaged in the production of goods for commerce" and thus were covered by the Act. The Court said:

"It follows that it is immaterial that appellees do not in fact produce the commodities that they haul or do any processing of them * * *.

" 'Production of goods for commerce' includes 'transporting' goods for commerce. * * * Under [Section 3(j) of the Act] they (these employees) are deemed to be engaged in the 'production' of such goods [for commerce]."

It should be noted that all the hauling was done within the State and that these goods hauled would never leave the State.

In the case of Wirtz v. English, D.C., 245 F.Supp. 628 (1965), the employees of defendant merely provided the service of hauling away salt water and sediment from local oil wells. Some of this oil from these wells passed out of the State in interstate commerce. The court held that the employees were covered by the Act as they were engaged in a closely related process or occupation directly essential to the production of goods (oil) for commerce.

If this service of hauling away waste is essential to production of goods for commerce, then surely the transporting in our situation is essential to the production of goods for commerce as defined in the Act.

█ I find, therefore, that from the applicable law and cases, the transportation of fuels used in interstate transportation, in production of goods for interstate commerce or in the maintenance and improvement of highways, waterways, etc., constitutes the production of goods for commerce within the meaning of the Act.

█ The Defendant claims as a defense the doctrine of *de minimis*, saying that the quantity and frequency of any work which might be connected with commerce is so negligible as to not come within the Act.

From the stipulation, the Plaintiff is only requesting relief for weeks in which the employees made at least one delivery to one or more of the fifty-six consignee-users which were all engaged in commerce.

The Act, Section 206(b), specifically provides that overtime will be paid during any work week in which the employees are engaged in the production of goods for commerce as defined in Section 203 of the Act.

Also, the case of Mitchell v. Independent Ice & Cold Storage Company, 294 F.2d 186 (5 Cir. 1961), cert. den. 368 U.S. 952, 82 S.Ct. 394, 7 L.Ed.2d 386, held that the *de minimis* rule applies only when deliveries of goods are sporadic and of insubstantial amounts.

The deliveries in our case were made with regularity and involved substantial

amounts. That defense, therefore, is without merit.

Defendant also asserts the defenses afforded him under 213(b) (1) [1], and 213 (a) (2)–(4) [2].

■ As a matter of law, the 213(b) (1) defense is without merit because of Defendant's own stipulation. Defendant admits that no goods transported have had a prior movement in interstate commerce, and that all transporting by Defendant is intrastate.

■ The 213(a) (2)–(4) defense has some merit and can be argued, but I believe under the cases and applicable law that the Defendant here does not qualify for this exemption. Idaho Sheet Metal Works, Inc. v. Wirtz, Secretary of Labor, 383 U.S. 190, 86 S.Ct. 737, 15 L.Ed.2d 694; Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 80 S.Ct. 453, 4 L.Ed.2d 393; Wirtz v. Office Communication Co., 244 F.Supp. 994; Wirtz v. English, D.C., 245 F.Supp. 628.

The Plaintiff here requests an injunction to prevent Defendant from further withholding any overtime compensation.

Having found that Defendant's employees are covered by the Act, they are entitled to the overtime pay provisions of the Act.

It is ordered that the Defendant will pay these overtime amounts due as charted under the second computation based on a work week scale.

The Defendant in the future will pay overtime wages as prescribed by the Act.

The Plaintiff further seeks an injunction against Defendant, enjoining further violations of Sections 7 and 11(c) of the Act.

1. 213(b) (1)—"§ 213. Exemptions
\* \* \* \* \*
"(b) The provisions of section 207 of this title shall not apply with respect to—
"(1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of title 49; or \* \* \*."

2. 213(a) (2)–(4)—"§ 213. Exemptions
"(a) The provisions of sections 206 and 207 of this title shall not apply with respect to—
\* \* \* \* \*
"(2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located, if such establishment—
"(i) is not in an enterprise described in section 203(s) of this title, or
"(ii) is in such an enterprise and is a hotel, motel, restaurant, or motion picture theater; or is an amusement or recreational establishment that operates on a seasonal basis, or
"(iii) is in such an enterprise and is a hospital, or an institution which is primarily engaged in the care of the sick, the aged, the mentally ill or defective, residing on the premises of such institution, or a school for physically or mentally handicapped or gifted children, or
"(iv) is in such an enterprise and has an annual dollar volume of sales (exclusive of excise taxes at the retail level which are separately stated) which is less than $250,000.
"A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry; or
"(3) any employee employed by any establishment engaged in laundering, cleaning, or repairing clothing or fabrics, more than 50 per centum of which establishment's annual dollar volume of sales of such services is made within the State in which the establishment is located: *Provided,* That 75 per centum of such establishment's annual dollar volume of sales of such services is made to customers who are not engaged in a mining, manufacturing, transportation, or communications business; or
"(4) any employee employed by an establishment which qualifies as an exempt retail establishment under clause (2) of this subsection and is recognized as a retail establishment in the particular industry notwithstanding that such establishment makes or processes at the retail establishment the goods that it sells: *Provided,* That more than 85 per centum of such establishment's annual dollar volume of sales of goods so made or processed is made within the State in which the establishment is located; or \* \* \*."

**60**

■ An injunction is an extraordinary process and should not be used without restraint. Our case, I feel, does not call for such a remedy.

■ The Defendant felt he had a just defense, and he was reasonable in feeling so. The Defendant has maintained adequate work records of his employees, and there is no charge that they are inaccurate. An injunction is not called for and shall not issue.

Counsel for the Plaintiff shall prepare an appropriate judgment for entry after submitting the same to counsel for Defendant for approval.

The Clerk will send copies of this Memorandum and Order to counsel for the parties.