**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee,**

v.

**RAY SMITH TRANSPORT COMPANY, Defendant-Appellant.**

No. 26478.

United States Court of Appeals
Fifth Circuit.

March 28, 1969.

Rehearing and Rehearing En Banc
Denied July 15, 1969.

T. S. Christopher, Fort Worth, Tex., White, McElroy & White, Adair Dyer, Jr., Dallas, Tex., Christopher & Bailey, Fort Worth, Tex., for appellant.

Charles Donahue, Sol., Dept. of Labor, Washington, D. C., M. J. Parmenter, Reg. Atty., Dept. of Labor, Truett E. Bean, Atty., Dept. of Labor, Dallas, Tex., Robert E. Nagle, Bessie Margolin, Donald S. Shire, Attys., Dept. of Labor, Washington, D. C., for appellee.

Before TUTTLE and GEWIN, Circuit Judges, and PITTMAN, District Judge.

GEWIN, Circuit Judge:

The narrow question raised by this appeal is whether truck drivers transporting petroleum products from Texas refineries to points elsewhere in that state are engaged in the *production of goods for commerce* [1] within the meaning of the Fair Labor Standards Act of 1938 as amended.[2] The United States District Court for the Eastern District of Texas answered in the affirmative and held the drivers covered by the Act.[3] We affirm.

During the period relevant to this suit, the appellant-employer, Ray Smith Transport Company, operated a fleet of specialized motor transportation equipment within the state of Texas. The Secretary seeks by this suit to bring the drivers working out of the appellant's Tyler, Texas office within the coverage of the Act. The drivers regularly engaged in transporting gasoline, kerosene and diesel fuel from the refineries and pipeline terminals of major oil companies to wholesale distributors, retail service stations, and certain commercial and industrial consumers.[4] All deliveries were made within the state.

In determining whether the appellant's drivers engaged in the *production of goods for commerce*, we must deal with two inquiries: (1) whether the drivers engaged in the *production* of the petroleum products they transported; and (2) whether the petroleum products were produced *for commerce*.[5]

■ The answer to the first of these inquiries lies within the statutory definition of "production" and the cases construing it. Section 3(j) of the Act provides that "an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, *transporting*, or in any other manner working on such goods . . .." [6] The appellant urges that "transporting" has reference merely to the intra-plant and plant-to-plant transporting which takes place before the manufacturing process is completed and that anemployee who transports a finished product to market is not engaged in *production*. The appellant relies upon Western Union Tel. Co. v. Lenroot [7] in which the Supreme Court rejected a construction of

---

1. 29 U.S.C. § 206(a) (1964).

2. 29 U.S.C. §§ 201–219 (1964).

3. 280 F.Supp. 54 (E.D.Tex.1968). The Secretary of Labor brought this suit in the district court to enjoin the appellant-employer from violating the overtime and record keeping requirements of the Act and to restrain the appellant from continuing to withhold unpaid compensation due under the Act. See 29 U.S.C. § 215(a) (2) and (5) (1964). The district court ordered the appellant to pay the overtime amounts sought but refused to enjoin further violations of the Act.

4. A pre-trial stipulation established a list of fifty-six consignee-users as representative of those to whom the appellant's employees made deliveries. The district court restrained the appellant from withholding payment of overtime compensation due employees for weeks in which the employees made at least one delivery to one or more of these fifty-six consignee-users.

5. Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 90, 63 S.Ct. 125, 87 L.Ed. 83 (1942).

6. 29 U.S.C. § 203(j) (1964) (emphasis added).

7. 323 U.S. 490, 65 S.Ct. 335, 89 L.Ed. 414 (1945).

the words "handling" and "working on," as used in section 3(j), which would have them mean not only handling or working on in relation to producing or making an article ready to enter commerce, but would also include the handling or working on which accomplishes movement in commerce itself.[8] However, this narrow construction of *production* has not survived in subsequent Supreme Court decisions. In Thomas v. Hempt Bros.[9] and Alstate Constr. Co. v. Durkin,[10] the Court held that employees who hauled road surfacing materials from the manufacturer to the road construction site were engaged in *production*. Likewise, the decisions of *this* court have adopted a more liberal construction of *production* than that urged by the appellant.[11] In Wirtz v. Standard Container & Paper Co.,[12] we held that drivers who hauled cardboard containers from a supplier's warehouse to manufacturers who used the containers were "transporting" within the meaning of section 3(j) and were, therefore, engaged in *production*. And in Mitchell v. Jaffe,[13] we reached a similar result where the employees of a

scrap metal dealer received and handled wrecked automobiles and then transported the metal salvaged from them to a manufacturer.[14] Viewed in the light of these decisions, it is clear that the drivers were engaged in the production of the goods they transported and that the appellant's reliance upon *Western Union* is misplaced.

Next we reach the question of whether the petroleum products delivered by the drivers were produced *for commerce*. The answer depends upon the uses made of the products after delivery. The drivers made most of their deliveries to wholesale oil distributors and retail service stations. An unsegregated portion of the petroleum delivered to these establishments eventually made its way into the fuel tanks of motor vehicles traveling across state lines. Other deliveries, fewer in number, were made to the following consumers: (a) manufacturers who used the petroleum in the manufacture of goods for interstate sale or as fuel in trucks transporting their goods to other states; (b) drilling companies which used the petroleum to drive equip-

8. *See* Walling v. Comet Carriers, Inc., 151 F.2d 107, 110 (2d Cir. 1945); Baldwin v. Emigrant Indus. Sav. Bank, 150 F.2d 524, 526, 161 A.L.R. 1234 (2d Cir. 1945).

9. 345 U.S. 19, 73 S.Ct. 568, 97 L.Ed. 751 (1953).

10. 345 U.S. 13, 73 S.Ct. 565, 97 L.Ed. 745 (1953). The Court in *Alstate* makes no specific reference to employees engaged in transporting the surfacing materials, but speaks generally of employees who work away from the construction site in their production. However, Mr. Justice Douglas' dissent, 345 U.S. at 17, 73 S.Ct. 565, and the lower court's opinion, Tobin v. Alstate Constr. Co., 95 F.Supp. 585, 586–87 (M.D.Pa.1951), make it clear that these delivery employees were included within the scope of the Court's holding. *See* Wirtz v. Intravaia, 375 F.2d 62, 65 (9th Cir.), *cert. denied,* 389 U.S. 844, 88 S.Ct. 90, 19 L.Ed.2d 110 (1967).

11. Wirtz v. Standard Container & Paper Co., 389 F.2d 134, 136 (5th Cir. 1967); Wirtz v. Pepsi Cola Bottling Co., 342 F. 2d 820 (5th Cir. 1965); Mitchell v. Hooper Equip. Co., 279 F.2d 893, 898–99 (5th Cir. 1960); Mitchell v. Jaffe,

261 F.2d 883, 887–888 (5th Cir. 1958); *see* Wirtz v. Intravaia, 375 F.2d 62, 65–66 (9th Cir.), cert. denied, 389 U.S. 844, 88 S.Ct. 90, 19 L.Ed.2d 110 (1967); Wirtz v. Crystal Lake Crushed Stone Co., 327 F.2d 455, 458–459 (7th Cir. 1964); Wirtz v. Dunmire, 239 F.Supp. 374, 379 (W.D.La.1965).

12. 389 F.2d 134 (5th Cir. 1967).

13. 261 F.2d 883 (5th Cir. 1958).

14. The fact that the drivers in the case *sub judice* were not employees of the oil companies but were employees of an independent carrier does not significantly distinguish this case from *Standard Container* and *Jaffe*. "Mere separation of the economic processes of production for commerce between different industrial units, even without any degree of common ownership does not destroy the continuity of production for commerce." D. A. Schulte, Inc. v. Gangi, 328 U.S. 108, 121, 66 S.Ct. 925, 931, 90 L.Ed. 1114 (1946); *see* Wirtz v. Intravaia, 375 F. 2d 62, 65 (9th Cir.), *cert. denied,* 389 U.S. 844, 88 S.Ct. 90, 19 L.Ed.2d 110 (1967); Mitchell v. Hooper Equip. Co., 279 F.2d 893, 896–897 (5th Cir. 1960).

ment used in drilling for oil destined to enter interstate commerce;[15] (c) truck and bus lines which used the petroleum as fuel to transport goods and passengers across state lines. We have previously held that the production of electrical energy used in the manufacture of goods for interstate commerce and for the transportation of goods and persons in interstate commerce is production *for commerce*.[16] Thus we have no difficulty now in concluding that the production of the petroleum products delivered to the above-mentioned recipients is likewise production *for commerce*.

The appellant's drivers also delivered petroleum to construction firms which used it as fuel to run equipment engaged in the construction and maintenance of interstate highways, waterways, and a railroad—avenues of transportation which the courts have characterized as instrumentalities of commerce.[17] Although the petroleum products delivered to these firms were utilized intrastate, the fact that they performed an essential function in the construction and maintenance of instrumentalities of commerce

makes inescapable the conclusion that they were produced *for commerce*. This result is dictated by *Alstate*[18] where the Supreme Court declared that production for instrumentalities of commerce is production *for commerce* and held that production of a concrete mixture manufactured in Pennsylvania and used in the construction of interstate roads in Pennsylvania was production *for commerce*.[19]

■■ The appellant vigorously contends that the remoteness between the activity of its employees and the uses eventually made of the petroleum products precludes a finding that the products were produced *for commerce*. The contention, however, is without merit. If a producer can reasonably expect his product to move or cause movement in interstate commerce, it is immaterial in determining whether the product was produced *for commerce* that this interstate activity is several steps removed from the producer's operation.[20] Although there is no evidence in the record that the appellant actually knew of the relevant uses made of the petroleum, we believe it must be charged with such

15. Also among the fifty-six consignee-users to whom the appellant's employees made deliveries were four companies whose only use of the petroleum was in the manufacture of drilling mud. There is no evidence that the mud was used anywhere but in the Texas oil fields. We express no opinion as to whether the use of the petroleum by these four companies was sufficiently related to interstate commerce to make production of the petroleum used by them production *for commerce*. This reservation of opinion does not disturb the amount due the employees as determined by the district court, see footnote 4, since a careful examination of the work record exhibits reveals that in no relevant workweek were there deliveries exclusively to these four companies.

16. Lewis v. Florida Power & Light Co., 154 F.2d 751, 753 (5th Cir. 1946); *see* Mitchell v. Independent Ice & Cold Storage Co., 294 F.2d 186, 189–90 (5th Cir. 1961); Mitchell v. Mercer Water Co., 208 F.2d 900 (3d Cir. 1953); Meeker Cooperative Light & Power Ass'n v. Phillips, 158 F.2d 698, 699 (8th Cir. 1946); West Ky. Coal Co. v. Walling, 153 F.2d 582, 584 (6th Cir. 1946).

17. *See* Alstate Constr. Co. v. Durkin, 345 U.S. 13, 16, 73 S.Ct. 565, 97 L.Ed. 745 (1953); Overstreet v. North Shore Corp., 318 U.S. 125, 129–130, 63 S.Ct. 494, 87 L.Ed. 656 (1943).

18. 345 U.S. 13, 73 S.Ct. 565, 97 L.Ed. 745 (1943).

19. *See* Mitchell v. C. W. Vollmer Co., 349 U.S. 427, 430, 75 S.Ct. 860, 99 L.Ed. 1196 (1955); Thomas v. Hempt Bros., 345 U.S. 19, 73 S.Ct. 568, 97 L.Ed. 751 (1943); Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656 (1943); Wirtz v. Intravaia, 375 F.2d 62 (9th Cir.) cert. denied, 389 U.S. 844, 88 S.Ct. 90, 19 L.Ed.2d 110 (1967); Wirtz v. Crystal Lake Crushed Stone Co., 327 F.2d 455, 457–458 (7th Cir. 1964); Mitchell v. Hooper Equip. Co., 279 F.2d 893, 895–896 (5th Cir. 1960); Mitchell v. Emala & Associates, Inc., 274 F.2d 781, 783–784 (4th Cir. 1960).

20. Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 92–93, 63 S.Ct. 125, 87 L.Ed. 83 (1942); United States v. Darby, 312 U.S. 100, 118, 657, 61 S.Ct. 451, 85 L.Ed. 609 (1941); *see* Bracey v. Luray, 138 F.2d 8, 11 (4th Cir. 1943).

knowledge because of the type product involved and the nature of the businesses to which it was delivered.[21]

It follows that the drivers were engaged in the production of goods for commerce and are, therefore, covered by the Act. The judgment is affirmed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

21. *See* Wirtz v. Crystal Lake Crushed Stone Co., 327 F.2d 455, 458 (7th Cir. 1964); Mitchell v. Jaffe, 261 F.2d 883, 887–888 (5th Cir. 1958); Mitchell v. Raines, 238 F.2d 186, 188 (5th Cir. 1956); Tobin v. Celery City Printing Co., 197 F.2d 228, 229 (5th Cir. 1952); St. John v. Brown, 38 F.Supp. 385, 388–389 (N.D.Tex.1941).